Benton **MUSSLEWHITE**, Appellant,

v.

The **STATE BAR OF TEXAS**, Appellee.

No. B14–89–00041–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 8, 1990.

Rehearing Denied March 8, 1990.

438

Benton Musslewhite, Houston, for appellant.

Linda Acevedo and Steven D. Peterson, Austin, for appellee.

Before PAUL PRESSLER, ROBERTSON and SEARS, JJ.

## OPINION

ROBERTSON, Justice.

Benton Musslewhite appeals from a judgment revoking his probation and suspending him from the practice of law for three years. In twenty-three points of error he claims the court erred in finding he had violated a disciplinary rule and in finding he had taken on a new client during the year in which he was prohibited from doing so. Musslewhite also asserts certain procedural errors. We affirm.

On November 10, 1987, the trial court called the original disciplinary actions against Musslewhite to trial. The parties announced to the court that they agreed to withdraw the original disciplinary actions, they waived trial by jury, and they agreed to a settlement. The trial court signed an agreed judgment on January 29, 1988. The judgment required that Musslewhite be suspended from the practice of law for ninety days beginning November 1, 1988. The court further suspended Musslewhite from the practice of law for three years. The court suspended the three year suspension and placed Musslewhite on probation for three years beginning January 31, 1989. Under the terms of the probation Musslewhite was prohibited, among other things, from committing professional misconduct as defined by the State Bar Rules and from accepting new employment until November 1, 1988. The court permitted Musslewhite to refer potential clients to other attorneys. The court further ordered that, "should Respondent violate any of the ... terms or conditions of probation, the Court may revoke such probation and impose a suspension from the practice of law for a period not to exceed three years[.]"

In September, 1988, the State Bar filed a motion to revoke Musslewhite's probation on two grounds. First, he improperly solicited victims of the Piper Alpha tragedy in Scotland. Second, Musslewhite accepted new employment during the period of time he was prohibited from doing so.

### The Piper Alpha Allegations

An off-shore oil platform, known as the Piper Alpha, exploded in the North Sea on July 6, 1988. Beginning at approximately 10:30 that morning, Musslewhite began making telephone calls to Scottish solicitors to discuss a potential lawsuit. On July 15, 1988, Musslewhite made arrangements to go to Scotland to obtain cases arising out of the Piper Alpha tragedy. Before going to Scotland, Musslewhite talked with John O'Quinn about referring to O'Quinn any cases he obtained in Scotland. Musslewhite also spoke with Kelly Newman to obtain his assistance in working on the Piper Alpha cases. Musslewhite gave Newman a list of solicitors and asked him to go to Scotland and telephone them.

When Newman arrived in Scotland he began to telephone the Scottish solicitors. When talking with the solicitors, Newman identified himself as working with "some of the best trial lawyers in Houston" who were investigating the Piper Alpha tragedy. He told them he was talking to solicitors about possible referral of cases for filing in the United States. He told them Musslewhite would be there in a few days to talk with them in person. Newman did not tell the solicitors that Musslewhite was prohibited from accepting new clients until November 1, 1988, or that he would be suspended from practicing law between November 1, 1988, and January 30, 1989.

When Musslewhite arrived in Scotland, two days later, he and Newman hired a public relations consultant named John MacDonald. MacDonald prepared a press release that day and issued it for Musslewhite. The press release referred to Musslewhite as the team's lead counsel, and stated that the team would be working with Scottish solicitors. The release described the unnamed members of the team as "internationally-renowned."

After the press release was issued, Musslewhite left for London while Newman stayed behind. Newman sent a letter addressed to "all victims or families of victims of the Occidental Petroleum Platform disaster." That letter said that Newman was acting on behalf of a "group of internationally renowned trial lawyers in the United States," and stated:

The purpose of this letter is to ask that if you have already retained a solicitor to let us know who that solicitor is so we can discuss the suit that we are bringing in the United States with him. If you have not retained a solicitor then we would advise that you do so as a matter of urgency and ask him to contact us so that we can discuss the action in the United States.

MacDonald, the public relations consultant, prepared the letter and prepared a newspaper advertisement for Musslewhite's group. Musslewhite knew about both communications and discussed them over the telephone with Newman. The advertisement MacDonald prepared stated that the team was willing to talk to "victims, families of victims, and their solicitors."

In its motion to revoke probation the State Bar claims that, by issuing the press release, the letters, and the advertisement, Musslewhite violated DR 2-101[1] because certain statements in those communications were false and misleading. DR 2-101 provides:

(A) A lawyer shall not make, on behalf of himself, his partner, associate, or any other lawyer, any false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

(1) Contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;

(2) Contains a statement of opinion as to the quality of legal services;

(3) Contains a representation or implication regarding the quality of legal services which is not susceptible to reasonable verification by the public;

(4) Contains predictions of future success;

(5) Contains statistical data which is not susceptible to reasonable verification by the public;

(6) Contains other information based on past performance which is not susceptible to reasonable verification by the public;

(7) Contains a testimonial about or endorsement of a lawyer;

(8) Is intended or is likely to create an unjustified expectation about results the lawyer can achieve.

SUPREME COURT OF TEXAS, RULES GOVERNING THE STATE BAR OF TEXAS art. 10, § 9 (Code of Professional Responsibility) DR 2-101 (1988).

The trial court found the press release, letters, and advertisement were false and misleading because they failed to identify the lawyers, because no team existed, because the communications suggested that Musslewhite already had Piper Alpha clients, because they did not disclose that Musslewhite could not take any cases, because Musslewhite predicted high recoveries in Texas courts, and because the advertisement did not contain a disclaimer stating that Musslewhite was not certified by the Texas Board of Legal Specialization.

In point of error one, Musslewhite contends the press release, letters, and advertisement were directed to solicitors, not the public; therefore, he did not violate DR 2-101. Musslewhite's contention is simply not true. The letters were mailed to the victims of the Piper Alpha tragedy and were addressed to "All Victims or Families of Victims of the Occidental Petroleum Platform Disaster." Further, the advertisement stated, "[W]e respectfully suggest it is in your interest to have your solicitor call us immediately or that *you call us immediately* and give us the name, address and phone number of your solicitor or the solicitor you propose to employ." Clearly, the press release, letters, and advertisement were directed to the victims of

---

**1.** DR 2-101 was repealed effective November 1, 1989. The substance of the rule has now been codified in the SUPREME COURT OF TEXAS, RULES GOVERNING THE STATE BAR OF TEXAS article 10, section 9, (Rules of Professional Conduct) Rule 7.01 (1989). We will apply the rules in effect at the time probation was revoked.

the tragedy, not their solicitors. Point of error one is overruled.

■ In points of error two and three Musslewhite claims DR 2–101 is unconstitutionally vague. A regulation that "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). The Fourteenth Amendment's Due Process Clause insists that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). This requirement applies with particular force in review of laws dealing with speech. *Hynes v. Mayor of Oradell*, 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976). These guarantees apply fully to attorney disciplinary proceedings. *In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968).

■ Appellant claims that DR 2–101 is unconstitutionally vague because it does not advise the attorney that he may be prevented from advertising to other lawyers in other countries. We do not find that DR 2–101 is unconstitutionally vague. It does not forbid conduct in terms that are so vague that people of common intelligence must guess at its meaning. The rule does not regulate communication with other lawyers. Contrary to appellant's contentions, he was not disciplined for communications with other lawyers, he was disciplined for false communications to victims of the Piper Alpha tragedy. That activity is clearly prohibited by DR 2–101.

Moreover, the supreme court adopted DR 2–101 and the other State Bar rules as advertising guidelines to remove the uncertainty and confusion surrounding attorney advertising, solicitation, and trade names in the aftermath of *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). We presume the court intended that DR 2–101 comply with the restraints constitutionally permitted to prevent false, deceptive, or misleading advertising. Accepting the supreme court's inherent power to adopt the rule, it is not our function as an intermediate appellate court to nullify or alter it, for once the court decides on a rule of law, the decision is, in the absence of a controlling decision by the United States Supreme Court, binding on lower courts until the court changes the rule. *Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex.1964).

In points of error four through nine and eleven Musslewhite claims the evidence was insufficient to support findings that the press release, letters, and advertisement were false and misleading. He also claims that Newman acted alone in publishing the advertisement and mailing the letters. Musslewhite's insufficiency of the evidence points require this court to exercise our fact jurisdiction, and in so doing, we will apply the traditional test and consider all of the evidence to determine whether the verdict is clearly unjust.

■ First, Musslewhite claims the evidence does not show that the press release, letters, and advertisement were false and misleading. With regard to the press release, the recitation that a "team of internationally renowned U.S. Lawyers based in Houston, Texas" is misleading because it fails to identify any of the lawyers. Further, Musslewhite admitted that anyone reading the press release would not know who the team was. The release also states that the team "would be working with United Kingdom solicitors to represent the victims or families of victims involved in the Piper Alpha tragedy." That statement is false and misleading because it suggests that Musslewhite, or the team, already had Piper Alpha clients, when they did not. The release refers to Musslewhite as the "team's lead counsel." That is misleading because the release does not disclose that the agreed judgment prevented Musslewhite from accepting new employment by clients and that he would be suspended for ninety days in the future. Finally, DR 2–101 requires a lawyer who publishes, advertises, or broadcasts with regard to any

area of law to include a disclaimer stating that he is not certified by the Texas Board of Legal Specialization. The press release fails to include such a disclaimer.

The letter sent to the victims of the Piper Alpha tragedy also refers to a "group of internationally renowned trial lawyers in the United States" and is misleading because it does not identify the lawyers. Further, the statement that the team is "currently having discussions with a number of United Kingdom solicitors with a view to filing suit in the state court of Texas to obtain maximum damages" is false and misleading because it suggests that the "team" already had Piper Alpha clients when it actually did not.

The advertisement that was published in the local Aberdeen paper contains similar misrepresentations. Again, the reference to a "team of internationally renowned American lawyers experienced in handling damage claims in mass disaster in the United States of America and Europe" is misleading because it never identifies the lawyers and is not susceptible to reasonable verification by the public. The advertisement similarly does not contain a disclaimer. We find sufficient evidence that the press release, letters, and advertisement contained false and misleading statements.

■ Musslewhite also contends that Newman acted alone when in Scotland and, specifically, with regard to the running of the advertisement and the mailing of the letters to the victims. The evidence shows, however, that Musslewhite telephoned Newman and asked that Newman work with him on the project. Musslewhite provided Newman with a list of solicitors and potential clients to telephone once he arrived. Musslewhite admitted that Newman discussed the advertisement with him over the telephone and that Newman showed him the letter before it was mailed. Newman testified that MacDonald drafted the advertisement based on information provided by Newman and Musslewhite. We find the evidence sufficient to show that Newman was working with Musslewhite when he published the advertisement and mailed

the letters. Points four through nine and eleven are overruled.

In point of error ten Musslewhite claims he was entitled to have the allegations concerning the Piper Alpha matter processed through the grievance committee. To the contrary, the agreed judgment states that

it is further ordered that should Respondent violate any of the ... terms or conditions of probation, the Court may revoke such probation and impose a suspension from the practice of law for a period not to exceed three (3) years[.] Either Petitioners, or the Office of General Counsel of the State Bar of Texas, shall file a written motion to revoke with the Court briefly describing the acts and conduct that gave rise to the claimed violation of probation[.]

\*     \*     \*     \*     \*     \*

The Court shall decide without the aid of a jury whether Respondent violated any of the terms or conditions of probation[.]

The judgment to which Musslewhite agreed clearly provides that the court may act on the motion to revoke probation without referring the matter to a grievance committee first. Point of error ten is overruled.

### The Agent Orange Case

Ronald Lee Hartman and his wife, Katherine H. Hartman, employed Musslewhite in April, 1988, to pursue claims resulting from Mr. Hartman's possible exposure to Agent Orange. Mrs. Hartman executed a power of attorney on behalf of Mr. Hartman and herself employing the Law Offices of Benton Musslewhite, Inc. Musslewhite filed the lawsuit on behalf of the Hartman's on June 22, 1988. Musslewhite signed the petition and signed, by permission, the names Wayne Mansulla and Todd Ensign.

Musslewhite discussed associating Mansulla before suit was filed and orally agreed that Mansulla would assume the lead counsel. Later, after the custodian filed a motion to conduct an oral hearing on violations of Musslewhite's probation, the Hartmans signed a power of attorney with Mansulla. Mansulla subsequently decided to withdraw from the Agent Orange litiga-

tion. Musslewhite remained lead counsel in the Hartman case at the time the court's judgment revoking probation was signed. Musslewhite informed the Hartmans that he would be able to try the case, unless trial fell within his ninety-day suspension. The agreed judgment specifically prohibited Musslewhite from accepting new employment by clients until November 1, 1988.

■ In point of error twelve Musslewhite claims the Hartmans were not new clients so he did not violate the prohibition on accepting new clients. Musslewhite claims that, because the Agent Orange plaintiffs had already been certified as a class, the Hartmans were his constructive clients before they hired him in April, 1988. We disagree. The evidence clearly shows that Mrs. Hartman signed a power of attorney in April, 1988, which was during the period of time Musslewhite was prohibited from accepting new clients. Point of error twelve is overruled.

In points of error thirteen and eighteen Musslewhite claims that, to recover a referral fee, which the judgment allows, he had to be employed by the Hartmans. Musslewhite asserts that, after the Hartmans signed the power of attorney, he referred them to Mansulla. Musslewhite's averments are simply not true. In June, 1988, he filed an original petition for the Hartmans. At that point Musslewhite was the attorney to whom the court would look to be responsible for the trial of the case. He did not immediately refer the Hartmans to Mansulla nor did he accept employment simply to collect his referral fee. Further, the intent of the agreed judgment was to prohibit Musslewhite from accepting new employment, not to facilitate his recovery of referral fees. Points thirteen and eighteen are overruled.

In points fourteen, fifteen, and seventeen Musslewhite claims the clause preventing him from accepting new employment is unconstitutionally vague, in fatal conflict with DR 2-107,[2] imposes punishment not al-lowed by article 10, section 23(A) of the State Bar Rules, and violates DR 2-108.[3]

■ First, the vagueness doctrine applies to a *regulation* that "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.*, 269 U.S. at 391, 46 S.Ct. at 127. The doctrine does not apply to a judgment on a disciplinary action to which Musslewhite agreed.

■ Musslewhite next complains that the referral clause in the agreed judgment conflicts with DR 2-107. Musslewhite claims that, to require referral by an attorney without being employed as an attorney, conflicts with DR 2-107. DR 2-107 provides:

A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless: (1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

By that language, appellant attempts to show that he must be employed to refer a case. That simply is not what DR 2-107 means. DR 2-107 proscribes the division of attorney's fees with a nonpartner or nonassociate except under stated circumstances. The policy behind the rule is that persons represented by lawyers should be able to choose who finally represents them and the type of legal fees to be charged. *Baron v. Mullinax, Wells, Mauzy & Baab, Inc.*, 623 S.W.2d 457, 461 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.). The rule does not provide that, to collect a referral fee, the referring attorney must be employed by the client. The agreed judgment does not conflict with DR 2-107.

■ Appellant further claims the agreed judgment fatally conflicts with DR 2-108(B), which precludes a lawyer from entering into a settlement agreement that restricts the right to practice law. DR 2-108 states, "In connection with the settle-

---

**2.** Now State Bar Rule 1.04.

**3.** Now State Bar Rule 5.06

ment of a controversy or suit, a lawyer shall not enter into an agreement that restricts his right to practice law." A clear reading of section B reveals that the supreme court intended the prohibition on settlement agreements to apply to settlements on a client's behalf, not settlements of disciplinary proceedings. We do not find that DR 2–108(B) was meant to apply to an agreed judgment in a disciplinary action. The agreed judgment does not conflict with DR 2–108(B). Points fourteen, fifteen, and seventeen are overruled.

In point of error nineteen Musslewhite claims the State Bar was estopped from asserting that he improperly accepted employment from the Hartmans because the custodian appointed by the court advised Musslewhite that he had "no problem" with the manner in which Musslewhite referred the case. Musslewhite testified that he talked to the court's custodian, Hartley Hampton, and stated that the Hartmans had hired him and that he planned to refer them to Mansulla. Musslewhite testified that Hampton replied, "[N]o problem, just cover your bases." Musslewhite bases his estoppel argument on that statement. We overrule Musslewhite's point of error because Musslewhite's representation that he planned to refer the case was false. Musslewhite did not immediately refer the Hartman case; therefore, Hampton's statement cannot be the basis for estoppel. Point nineteen is overruled.

In point of error twenty Musslewhite claims the evidence is insufficient to support a finding that he accepted employment. We find the evidence that the Hartmans signed a power of attorney with Musslewhite in April, 1988, and that Musslewhite filed suit for the Hartmans in June, 1988, sufficient evidence to show that he accepted new employment during the time he was prohibited from doing so. Point or error twenty is overruled.

### Procedural Complaints

In point of error twenty-one Musslewhite claims he was denied procedural due process because he received the State Bar's motion to revoke probation only five days before the motion was heard. Although the motion to revoke was filed only five days before trial, the custodian filed a motion to conduct an oral hearing on July 19, 1988. The motion to conduct an oral hearing put appellant on notice of the charges he had to answer to the satisfaction of the trial court. The notice and opportunity to respond afforded appellant were sufficient to satisfy the demands of due process. Further, Musslewhite waived any error with regard to notice because the trial judge allowed him a thirty-day continuance to which he agreed. Point of error twenty-one is overruled.

In point of error twenty-two Musslewhite claims the trial court erred in not superseding the suspension while his appeal is pending. The State Bar Rules provide that a court cannot supersede judgment of suspension:

> Either party to a disciplinary action shall have the right of appeal to the Court of Appeals but, if the judgment appealed from be one suspending or disbarring the respondent, he or she shall not be entitled to practice law in any form while the appeal is pending and shall have no right to supersede the judgment by bond or otherwise.

SUPREME COURT OF TEXAS, RULES GOVERNING THE STATE BAR OF TEXAS art. 10, § 24 (1989). *See also Wilson v. State*, 582 S.W.2d 484 (Tex.Civ.App.—Beaumont 1979, no writ). The trial court acted correctly in refusing Musslewhite's request that his suspension be superseded pending appeal. Point of error twenty-two is overruled.

In points of error sixteen and twenty-three Musslewhite claims that a three year suspension is excessive punishment. In a disciplinary proceeding, the punishment affixed is a matter for the exercise of the sound discretion of the trial court. *Daves v. State Bar of Texas*, 691 S.W.2d 784, 790 (Tex.App.—Amarillo, 1985, writ ref'd n.r.e.). To determine the appropriate measure of discipline, the trial court may conduct a separate evidentiary hearing and shall consider, in addition to any other relevant matters:

[T]he nature and degree of misconduct for which the respondent is being disciplined, the seriousness and circumstances attending the misconduct, assurance that those who seek legal services will be insulated from unprofessional conduct, the profit to the attorney or the injury or hardship to others resulting from the misconduct, avoidance of repetition, the deterrent effect upon others, the maintenance of respect for the honor and dignity of the legal profession, and the conduct of the respondent during the course of the investigation and trial of the disciplinary action. In addition thereto, the disciplinary record of the respondent is admissible on the issue of the appropriate measure of discipline to be imposed.

SUPREME COURT OF TEXAS, RULES GOVERNING THE STATE BAR OF TEXAS art. 10, § 23(B) (1989). Although the trial court held no separate hearing, we have reviewed the evidence and conclude that the trial court properly considered these and all the other relevant factors in imposing the three year suspension. Moreover, Musslewhite agreed to the three year suspension when he signed the agreed judgment. He cannot now complain of the punishment to which he agreed. Points of error sixteen and twenty-three are overruled.

The trial court's judgment is affirmed.