**COMMISSION FOR LAWYER DISCIPLINE, Appellant,**

v.

**C.R., Appellee.**

**No. 2–00–329–CV.**

Court of Appeals of Texas, Fort Worth.

Aug. 16, 2001.

Office of the Chief Disciplinary Counsel, and Linda A. Acevedo, Assistant Disciplinary Counsel, Austin, for appellant.

Ruth A. Kollman, Dallas, for appellee.

PANEL A: CAYCE; C.J.; LIVINGSTON and WALKER, JJ.

## OPINION

CAYCE, Chief Justice.

### Introduction

The Commission for Lawyer Discipline appeals the order of Visiting Judge John Weeks granting a no-evidence summary judgment in favor of lawyer C.R. The issues we must decide are whether the Commission presented evidence that C.R.'s advertisement entitled "ACCIDENTAL INJURY HOTLINE" was one for legal services, rather than a public service announcement, and whether there is some evidence establishing that the advertisement violated the Disciplinary Rules governing lawyer advertising. Because we conclude there is summary judgment evi-

dence supporting the Commission's allegations, we will reverse and remand.

### Facts

C.R. is an attorney licensed to practice law in Texas. He has been licensed since 1989 and his practice is located in Fort Worth. His area of concentration is personal injury law, to which he devotes 100% of his practice. C.R. is not certified by the Texas Board of Legal Specialization.

In 1997, C.R. placed advertisements in the yellow pages for the Southwestern Bell, GTE, and Transwestern telephone books under the heading "Attorney Referral and Information." Each of the advertisements was entitled "ACCIDENTAL INJURY HOTLINE," bore a copyright date of 1994, and was published in both English and Spanish. The advertisement offered "FREE 24 HOUR RECORDED LEGAL ANSWERS," and provided a telephone number, along with a list of different topics within personal injury law and a corresponding four-digit code for each topic. The legal topics from which a caller could select included the following:

2000 What to do after any accident

2050 Pitfalls to avoid

2100 If you have no medical insurance

2150 The value of your claim

2200 Why hire an attorney

2250 Auto accidents

   2251 Capture critical facts

   2252 Repairing your car

   2253 Uninsured driver at fault

   2254 Hit & run accident

2300 Accidents causing paralysis, brain injury or death

2350 On-the-job injuries

2400 Slip and fall accidents

2450 Defective, dangerous products

   2451 Medical implants and surgical devices

2500 Swimming, diving and boating accidents

2550 Other serious accidents

2600 Claim disputes with your own insurance company

The Southwestern Bell advertisement stated at the bottom that it was an information service, and not an attorney referral service. None of the print advertisements identified C.R.'s name or office address or stated that an attorney sponsored the advertisement.

Individuals who call the Accidental Injury Hotline during normal business hours receive the following greeting:

Welcome to the Accidental Injury Hotline, with recorded answers to the most frequently-asked questions about accidental injuries to help accident victims protect their rights. There is no charge and no obligation for this free service.

Since you are calling during the day, you may arrange to speak to an attorney now or at any time you are on the Hotline by pressing "0" on your touch-tone phone.

The caller is then prompted to choose one of the four-digit codes and once again reminded to press "0" to arrange "a free, no obligation consultation about your case with an attorney now."

If a caller chooses to listen to one of the recorded legal answers, the recorded message provides general legal advice. For example, when the caller presses the four-digit code for "[i]f you have no medical insurance," the caller will hear the following recorded segment:

If you do not have medical insurance, getting proper medical treatment can be a real problem, for medical care is expensive, and untreated injuries may last a lifetime. Money is important, but there is no substitute for good health.

The liable party is ultimately responsible for an accident victim's medical bills. However, the liable party's insurance company usually will not voluntarily pay your medical bills until the case settles.

If your case qualifies, your attorney can arrange for you to get medical care without paying money now. Doctors will treat you under the attorney's letter of protection. When you receive money on your case, the doctors are then paid.

For a free, no obligation consultation about your case with an attorney, press "0" now. Press 2–2–2–2 to return to the Hotline main menu.

If you would like to hear more recorded answers, you may press another four digit code now.

[If no caller response, automatic disconnect.]

If the caller chooses to press "0" and it is during regular business hours, the call is forwarded to "the Fort Worth office of attorney [C.R.], the sponsor of the Accidental Injury Hotline." The caller is informed that C.R. is licensed to practice law by the Supreme Court of Texas and is not certified by the Texas Board of Legal Specialization. The caller is also told that "[t]his is an advertisement." If the caller presses "0" after normal business hours, the caller receives the same greeting, but is informed that C.R.'s staff are temporarily away from the office but can be reached in an emergency. In either case, the individual is prompted to leave a name, home address, call-back number, and description of the accident, the people involved, and injuries sustained. If the caller believes it is an emergency, the caller is directed to press the star button, leave a name, telephone number, and a description of the accident, and is told to stay by the phone for the next hour while one of C.R.'s on-call representatives is paged.

## Procedural Background

As a result of the yellow page advertisements and corresponding recorded information, the Advertising Review Committee of the State Bar of Texas notified C.R. of his failure to comply with the advertising filing and review requirements and instructed him to file the advertisement for review. C.R. informed the Advertising Review Committee that he would not file the advertisement because it was not an advertisement for him or his legal services.

Subsequently, the Commission for Lawyer Discipline ("the Commission") initiated a disciplinary proceeding against C.R. In its disciplinary petition, the Commission alleged that the Accidental Injury Hotline advertises C.R.'s legal services and violates the Texas Disciplinary Rules of Professional Conduct ("the Disciplinary Rules"). *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04(a)(1), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX.STATE BAR R. art. X, § 9). Specifically, the Commission asserted that the advertisement for the Accidental Injury Hotline is "inherently misleading" because it is located under the "Attorney Referral and Information Services" heading rather than the "Attorneys" heading in the yellow pages, and when a consumer calls the Hotline, he can listen to recordings of topics or be connected directly with an attorney's office, which turns out to be C.R.'s office. *See id.* 7.02(a)(1). The Commission further alleged that the advertisement violated the Disciplinary Rules because it omitted C.R.'s name, certification disclaimer, location, and other information required by the Disciplinary Rules. *See id.* 7.04(b)(1), (3), (j). In addition, the Commission asserted that C.R., through the advertisement, was practicing under the trade name "Accidental Injury Hot-

line," which violates the Disciplinary Rules. *See id.* 7.01(a), (e).

In response to the Commission's petition, C.R. filed a no-evidence motion for summary judgment. C.R. asserted in his motion that there was no evidence that the Accidental Injury Hotline advertisement was one for legal services and therefore subject to the Disciplinary Rules governing attorney advertising and the Commission failed to show that his advertisement was not exempt from the filing requirements of the Disciplinary Rules. C.R. also responded that there was no evidence that his advertisement constitutes the practice by C.R. under a trade name, is inherently misleading, does not publish the name of at least one lawyer who is responsible for the content of the advertisement, does not state with respect to each area advertised in which C.R. has not been awarded a certificate by the Board of Legal Specialization, and does not disclose the geographic location of C.R.'s office. The trial court granted C.R.'s no-evidence motion.

## Standard of Review

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. TEX.R.CIV.P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.; In re Mohawk Rubber Co.,* 982 S.W.2d 494, 497–98 (Tex.App.—Texarkana 1998, orig. proceeding). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* TEX.R.CIV.P. 166a(i) cmt.; *Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex.App.—San Antonio 1998, pet. denied); *Jackson v. Fiesta Mart, Inc.,* 979

S.W.2d 68, 71 (Tex.App.—Austin 1998, no pet.).

A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Frazier v. Yu,* 987 S.W.2d 607, 610 (Tex.App.—Fort Worth 1999, pet. denied); *Moore,* 981 S.W.2d at 269. We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex. 1994). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore,* 981 S.W.2d at 269.

## The Commission's Evidence

The Commission provided the following evidence in response to C.R.'s no-evidence motion:

• C.R.'s affidavit, in which he stated the following in relevant part:

In 1994, I began to sponsor an "Accidental Injury Hotline," which is a recorded menu-activated information service reached by consumers by calling a telephone number (the "Hotline"). I am identified as the sponsor of the Hotline. At the end of the Hotline information, consumers are informed that if they desire to speak to an attorney, they may do so by making another menu selection. The consumer who makes that menu selection is connected to my office. Development and production of the Hotline, including computer hardware, software, equipment, and scripting, cost me out-of-pocket expenses of approximately $30,000. Beginning in July of

1994, I advertised the Hotline in the Southwestern Bell Yellow Pages directory for Arlington, Fort Worth, and Northeast Tarrant County for 1994–95. The heading under which the advertisement was placed was "Attorney Referral and Information Services."

. . . .

In April of 1996, I attempted to increase my business opportunities by placing the same substantive advertisement, with minor graphics changes, with the GTE Yellow Pages directory, the fourth yellow pages directory service for my area. . . .

. . . .

The Hotline is directed toward consumers who are seeking information, not those who are in need of a listing of the names of attorneys. It is positioned under the "Information Services" heading to facilitate the location of the information by those consumers. Placement of the advertisement under the heading "Attorney" will not serve that purpose.

Since 1994, I would estimate that fifty percent (50%) of the telephone inquiries I receive in my office are generated as a result of the Southwestern Bell Yellow Pages advertisement for the Hotline. If the advertisement does not appear in the Southwestern Bell Yellow Pages for 1997–98 under the agreed "Attorney Referral and Information Services" heading, I estimate I will lose fifty percent (50%) of my business opportunities. My profit margins are such that if I lose fifty percent (50%) of my business opportunities for a year, I will be unable to continue my business or meet my financial obligations.

● The affidavit of Thomas Brandt, former vice-chair of the Advertising Review Committee and the Commission's expert witness. Brandt determined that C.R.'s "Accidental Injury Hotline" advertisement was published to generate "business opportunities" from "consumers" of legal services. He averred that the advertisement does not fall under the exemption of Rule 7.07(d) because it prompts callers to an attorney by dialing "0," and the only attorney who they can reach by dialing "0" is C.R.

Brandt was of the opinion that C.R. is practicing under the trade name "Accidental Injury Hotline" because he obtained a copyright of that name, he used the Hotline to obtain over 50% of his business opportunities, and when "consumers" call the Hotline, the only office to whom the caller can be connected is C.R.'s office.

Brandt stated that placing the advertisement under the section for "Attorney Referral and Information Services" is deceptive and misleading because the advertisement and subsequent recordings are not an attorney referral and information service. No reference is made to any qualified attorney referral service and no attorney information is provided about any attorney. Brandt concluded that the "overall impression of the advertisements is that callers are engaging a free public service pertaining to either attorney referral services or attorney information services," but instead "the consumers are calling a number where they are immediately and subsequently prompted to be connected with an attorney, by dialing '0,'" and "[t]he only attorney to whom they will be connected is [C.R.]."

The advertisement also violates the Disciplinary Rules because C.R.'s name and office location are not identified in the print advertisement and only identified in the recorded component after a

caller dials "0" to speak with an attorney.

• The affidavit of Ray Cantu, the Director of the Advertising Review Department. The content of Cantu's affidavit and his expert opinion were substantially the same as Brandt's affidavit.

• The affidavit of Robin Sisco, a former director of the Advertising Review Department, which stated in relevant part:

> I explained [to C.R.] that the ARC [Advertising Review Committee] believed the ad was required to be filed, does advertise legal services, and does contain several violations of Part VII of the [Disciplinary Rules]. I explained to [C.R.] that the ARC's position is that the advertisement is inherently misleading in violation of Rule 7.02(a)(1) of the [Disciplinary Rules] because it is placed under the Attorney Referral and Information Services section of the yellow pages. The attorney's name is not disclosed in the ad. When a consumer calls the Accidental Injury Hotline, he or she can listen to recordings of the various topics or be connected directly with an attorney's office—The Law Office of [C.R.]. It appears that [C.R.] is attempting to circumvent the Lawyer Advertising Rules and mislead the public by placing this ad under the Attorney Referral and Information Services heading rather than the Attorneys heading in the yellow pages and by omitting his name, certification disclaimer, location, and other information required by the Lawyer Advertising Rules.

• The parties' stipulation that included a copy of the challenged advertisements and a transcript of the recorded telephone segment of the advertisement.

**Rule 7.07(d)'s Exemption**

In its first point, the Commission argues that C.R.'s advertisement should be subject to the filing requirements of the Disciplinary Rules because it is an advertisement for legal services and C.R.'s purpose in placing the advertisement was to obtain professional employment. Rule 7.07(b) states that "a lawyer shall file with the Lawyer Advertisement and Solicitation Review Committee of the State Bar of Texas, either before or concurrently with the first dissemination of an advertisement in the public media, a copy of that advertisement." TEX. DISCIPLINARY R. PROF'L CONDUCT 7.07(b).

C.R. contends that the advertisement falls within the exemption of 7.07(d)(2) because the Accidental Injury Hotline is a public service announcement. Rule 7.07(d)(2) offers an exemption to the requirement of Rule 7.07(b) when the advertisement:

> (i) identifies one or more lawyers or a firm as a contributor to a specified charity or as a sponsor of a specified *charitable, community, or public interest program, activity, or event*; and

> (ii) contains no information about the lawyers or firm other than name of the lawyers or firm or both, location of the law offices, and the fact of the sponsorship or contribution[.]

*Id.* 7.07(d)(2) (emphasis supplied). To determine whether C.R.'s advertisement qualifies for this exemption, we must first determine whether the advertisement pertains to a "specified charitable, community, or public interest program, activity, or event."

There are no reported Texas cases defining what constitutes a public service announcement under the exemption provision of Rule 7.07(d)(2). As support for its position, the Commission directs us to a decision from Florida involving analogous

facts, in which the Florida Supreme Court held that a printed advertisement that purports to be a public service announcement, but which directs the caller to a prerecorded message offering legal services, is an advertisement for legal services and not a public service announcement. In *Florida Bar v. Doe*, 634 So.2d 160 (Fla.1994), a lawyer paid for an article in a local weekly newspaper that consisted of "helpful tips if you are stopped [for drunk driving over the holidays]" and advised the reader to "[c]lip and save these tips." *Id.* at 161. The attorney's name, business address, and telephone number were listed at the bottom of the article. *Id.* at 162. The article concluded by stating, "This document is provided as a public service to better educate the public as to their rights. It is not an advertisement of legal services and should not be considered as such." *Id.* at 161. The Florida Bar alleged that the lawyer violated Florida's Disciplinary Rules by failing to file the article with the Florida Bar's standing committee on advertising, failing to include the required disclaimers, and including potentially false or misleading information by stating that it was not an advertisement. *Id.* at 162. The lawyer countered that his article was not an advertisement for legal services, but a public service statement. *Id.*

The Florida court considered several criteria in distinguishing an advertisement from a public service announcement: (1) whether the attorney paid to have the article published; (2) whether the content of the message appears to serve the interests of the attorney as much as or more than the interests of the public; (3) whether the article contains legal advice; (4) whether the article concerns a legal subject; and (5) whether the article contains information concerning the attorney's areas of practice, legal background, or experience. *Id.*

The Florida court concluded that the advertisement was one for legal services because the attorney had paid a significant advertising fee to the newspaper to obtain publication of the article; a substantial portion of the attorney's business arose from defending persons charged with drunk driving; and the attorney arranged to have his name, occupation, business address, and telephone number portrayed within the article in a conspicuous manner. *Id.* at 162–63.

We agree with the rationale and holding of the Florida Supreme Court in *Florida Bar v. Doe* and find it instructive in deciding the filing requirement issue in this case. Similar to *Florida Bar v. Doe*, the Commission presented summary judgment evidence that C.R. had paid a significant fee to publish the advertisement, that a substantial portion of the lawyer's business is derived from the advertisement, and that persons responding to the advertisement would only be directed to the advertising lawyer for legal advice. The Commission's evidence shows that C.R. spent $30,000 to develop and implement the Accidental Injury Hotline; that 50% of his business opportunities derived from the Hotline; that he created the Hotline "to increase [his] business opportunities"; that if a person who calls the Hotline wants to be connected to an attorney, the only attorney he can reach through the Hotline is C.R.; and that C.R. devotes 100% of his practice to personal injury law, the subject of the Accidental Injury Hotline.

Viewing this uncontroverted evidence in the light most favorable to the Commission, we conclude that the Commission provided more than a scintilla of probative evidence that C.R.'s advertisement is not a public service announcement, but instead one for legal services. Therefore, the Commission has met its burden of presenting sufficient evidence to create a fact

issue on the question of whether C.R. satisfied the requirements of the filing exemption in Rule 7.07(d)(2). TEX. DISCIPLINARY R. PROF'L CONDUCT 7.07(d)(2)(i). We sustain point one.

### Violations of the Disciplinary Rules

■ Even assuming, as C.R. contends, that his advertisement for the Accidental Injury Hotline is exempted from the filing requirements of Rule 7.07(b), the advertisement must still satisfy the Disciplinary Rules. The comments to rule 7.07 state that "[t]he fact that a particular advertisement or written solicitation made by a lawyer is exempted from the filing requirements of this Rule does not exempt a lawyer from the other applicable obligations of these Rules." *Id.* 7.07 cmt. 7. Accordingly, we next turn to the question of whether the Commission presented sufficient evidence showing that the advertisement violates C.R.'s obligations under the Disciplinary Rules.[1]

### A. Use of Trade Name

■ The Commission alleges that C.R. violated subsections (a) and (e) of Rule 7.01, because the "Accidental Injury Hotline" is a trade name. Rule 7.01 states that "[a] lawyer in private practice shall not practice under a trade name, a name that is misleading as to the identity of the lawyer or lawyers practicing under such name," or "advertise in the public media or seek professional employment by written communication under a trade or fictitious name." *Id.* 7.01(a), (e). A trade name is a designation that is adopted and used by a person either to designate a good he markets, a service he renders, or a business he conducts. *Jud Plumbing Shop on Wheels,*

*Inc. v. Jud Plumbing & Heating Co.,* 695 S.W.2d 75, 78 (Tex.App.—San Antonio 1985, no writ) (op. on reh'g); *Walters v. Bldg. Maint. Serv., Inc.,* 291 S.W.2d 377, 382 (Tex.Civ.App.—Dallas 1956, no writ); *see also* BLACK'S LAW DICTIONARY 1494 (6th ed.1990).

■ The Commission provided the following evidence that C.R. is using the Accidental Injury Hotline as a trade name: his advertisements display "Accidental Injury Hotline" but not C.R.'s name; C.R. obtained a copyright on the name "Accidental Injury Hotline" and registered a service mark for the Hotline; and the only attorney a caller can reach by calling the Hotline is C.R. This is more than a scintilla of evidence that C.R. is using the Accidental Injury Hotline as a trade name and was sufficient to create a fact issue. *See, e.g.,* Tex. Comm'n on Prof'l Ethics, Op. 398 (1979) (determining name "Southwest Trial Associates" is trade name, and therefore improper); *In re Shephard,* 92 A.D.2d 978, 459 N.Y.S.2d 632, 633 (1983) (holding firm name "The People's Law Firm of Jan L. Shephard, Attorney, P.C." is a trade name and, thus, violated the New York rules of professional conduct); Iowa S.Ct. Bd. of Prof'l Ethics & Conduct, Op. 93–1 (1993) (ruling that "Ask a Lawyer," call-in legal answer service, is trade name and advertisement failed to identify lawyers involved or include necessary disclaimers); Ohio Bd. of Comm'rs on Grievances & Discipline, Op. 91–4 (1991) (finding name "Debt Relief Clinic" is both misleading and trade name); *cf.* Ohio Bd. of Comm'rs on Grievances & Discipline, Op. 93–1 (1993) (noting that firm telephone line offering legal advice on employment law issues called "Em-

---

1. C.R. responds to the Commission's point on the Disciplinary Rules violations by asserting that the Commission's expert affidavits are not summary judgment evidence because they contain legal conclusions and opinions. We will not address that issue because we need only look to C.R.'s affidavit and the parties' stipulations to determine whether there is evidence that the Accidental Injury Hotline violated the Disciplinary Rules.

ployment Information Line, a service of X Firm," does not violate rules because words "a service of X Firm" eliminates confusion; whereas description "Employment Information Line" alone may cause confusion as trade name).

## B. False, Misleading Advertisements

The Commission next claims that C.R. violated Rule 7.02(a)(1) because his printed advertisement for the Accidental Injury Hotline is false or misleading. The Commission argues that the advertisement is "inherently misleading" because it appears in the section of the yellow pages entitled "Attorney Referral and Information Service" rather than with the section for "Attorneys," and fails to inform the consumer that the Accidental Injury Hotline is really an advertisement for C.R.

Rule 7.02(a)(1) states that

A lawyer shall not make a false or misleading communication about the qualifications or the services of any lawyer or firm. A communication is false or misleading if it ... contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading[.]

TEX. DISCIPLINARY R. PROF'L CONDUCT 7.02(a)(1). The comments to the Disciplinary Rules state that "[w]hatever means are used to make known a lawyer's services, statements about them should be truthful and nondeceptive. Sub-paragraph (a)(1) recognizes that statements can be misleading both by what they contain and what they leave out. Statements that are false or misleading for either reason are prohibited." *Id.* 7.02 cmt. 2.

The only reported Texas case addressing false or misleading statements in attorney advertising is *Musslewhite v. State Bar of Texas*, 786 S.W.2d 437 (Tex.App.— Houston [14th Dist.] 1990, writ denied),

*cert. denied,* 501 U.S. 1251, 111 S.Ct. 2891, 115 L.Ed.2d 1056 (1991). In *Musslewhite,* an attorney published press releases and advertisements in Scotland to solicit claims from tort victims of an off-shore oil platform explosion. *Id.* at 439. The court found that the advertisements were false and misleading because they failed to identify the attorneys involved, falsely suggested that the attorney already had clients arising from the incident in question, failed to disclose that the lawyer was prohibited from taking any cases, predicted high recoveries in Texas courts, and did not contain disclaimers that the attorney was not certified by the Texas Board of Legal Specialization. *Id.* at 440.

A Connecticut court has also addressed false and misleading attorney advertisements. In *Haymond v. Statewide Grievance Committee,* 45 Conn.Supp. 481, 723 A.2d 821 (1997), *aff'd,* 247 Conn. 436, 723 A.2d 808 (1999), the Connecticut Superior Court reviewed an advertisement for the Law Offices of John Haymond that was published in the telephone directories for Springfield, Massachusetts. The advertisement stated that the firm consisted of a team of lawyers "Licensed in Massachusetts and Connecticut." *Id.* at 824. When the advertisement appeared, only four of the firm's fourteen attorneys were licensed to practice law in Massachusetts, and Haymond himself was licensed to practice law in Connecticut and Pennsylvania, but not in Massachusetts. *Id.* The Connecticut Bar disciplined Haymond for placing misleading advertisements in Massachusetts because, as a Connecticut lawyer, he was prohibited from misleading consumers in other states. *Id.* at 825–26; *see also* State Bar of N.M., Advisory Op.1988-3 (undated) (ruling that name "Personal Injury Network" violates rules because might be understood by general public as being organization of specialists in personal injury

law); Ill. State Bar Ass'n Advisory Op. on Prof'l Conduct, Op. 97–06 (1998), < *http://www.isba.org/Courtsbull/EthicsOpinions/97–06.asp* > (noting that "[i]f the [recorded legal] information is merely a preamble to the obvious solicitation to call a lawyer, the endeavor may well be seen as an overreaching and deceptive practice" when it is not labeled as "advertising material").

In the case at bar, the yellow pages advertisement does not identify C.R. If a caller wants to reach an attorney through the Accidental Injury Hotline, the only attorney he can reach is C.R. The caller, however, does not learn the name of the attorney with whom he will be connected until after he presses "0" to speak with an attorney. Moreover, the advertisement is located under the heading "Attorney Referral and Information Service," but is neither an attorney referral service nor an attorney information service. Instead, it is either an advertisement for C.R.'s law firm or a legal information service whose ultimate goal is to promote C.R.'s legal services and generate legal business. Based on these facts, we hold that a fact issue exists on whether C.R.'s advertisement contains false and misleading information.

### C. Omission of Required Information

■ The Commission further asserts that C.R.'s print advertisement violates the Disciplinary Rules because it omits information required by subsections (b) and (j) of Rule 7.04.

Rule 7.04 provides in relevant part:

(b) A lawyer who advertises in the public media:

(1) shall publish or broadcast the name of at least one lawyer who is responsible for the content of such advertisement.

. . . .

(3) shall state with respect to each area advertised in which the lawyer has not been awarded a Certificate of Special Competence by the Texas Board of Legal Specialization, "Not Certified by the Texas Board of Legal Specialization," however, if an area of law so advertised has not been designated as an area in which a lawyer may be awarded a Certificate of Special Competence by the Texas Board of Legal Specialization, the lawyer may also state, "No designation has been made by the Texas Board of Legal Specialization for a Certificate of Special Competence in this area."

. . . .

(j) A lawyer or firm who advertises in the public media must disclose the geographic location, by city or town, of the lawyer's or firm's principal office.

TEX. DISCIPLINARY R. PROF'L CONDUCT 7.04(b)(1), (3), (j).

The parties have stipulated to the content of both the print and recorded advertisements. In the print advertisement there is no mention of the attorney who is responsible for the advertisement, whether or not that attorney is board certified, or where the attorney's office is located. A caller only learns that the advertisement is sponsored by C.R., that he is licensed to practice law in Texas, that he is not certified by the Board of Legal Specialization, and that his office is in Fort Worth if and when the caller presses "0" for a "free, no obligation consultation about your case with an attorney." Based on this evidence, we conclude that the Commission presented more than a scintilla of evidence that C.R. violated subsections (b) and (j) of Rule 7.04.

■ The Commission also alleges that C.R. violated Rule 8.04(a)(1). Rule 8.04(a)(1) provides that a lawyer shall not violate the Disciplinary Rules, knowingly assist or induce another to do so, or do so

through the acts of another, whether or not the violation occurred in the course of an attorney-client relationship. *Id.* 8.04(a)(1). Because the discussion above on the evidence demonstrating a violation of the other Disciplinary Rules also establishes a violation of Rule 8.04(a)(1), we conclude that the Commission has presented more than a scintilla of evidence that C.R. violated Rule 8.04. Because the Commission presented more than a scintilla of evidence on each of the alleged disciplinary violations, we sustain the Commission's second point.

## Conclusion

Having sustained both of the Commission's points, we reverse the trial court's judgment and remand the case for trial.