**Affirmed and Opinion filed October 9, 2020.**



In The

# Fourteenth Court of Appeals

### NO. 14-20-00682-CV

## MARIO TORRES AND ANA PATRICIA TORRES, INDIVIDUALLY AND A/N/F OF N.T., A MINOR, Appellants

## V.

## TEXAS CHILDREN'S HOSPITAL AND DR. JOHN DOE AND DR. JANE DOE, Appellees

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-61396**

## OPINION

The parents of a hospitalized child seek review of the trial court's denial of their urgent plea for temporary injunctive relief to stop medical providers from taking the child off a ventilator. This interlocutory appeal raises important and complex legal issues — questions of apparent first impression in Texas. Due to the

exigencies these circumstances present, we decide the case just days after its arrival in this court.

Appellants/plaintiffs Mario Torres and Ana Patricia Torres, individually and as next friend of their minor son, N.T. (collectively, the "Torres Parties") bring this interlocutory appeal from the trial court's denial of their application for a temporary injunction against Texas Children's Hospital and doctors John Doe and Jane Doe (collectively, the "Medical Providers") to prevent the withdrawal of allegedly life-sustaining treatment from N.T.

## Procedural History

On October 5, 2020, the Torres Parties filed a motion in this court requesting temporary orders pursuant to Texas Rule of Appellate Procedure 29, and this court granted the requested relief, ordering Texas Children's Hospital and its agents, servants, employees, representatives, and attorneys to take no action pursuant to the procedures of section 166.046(e) of the Texas Health and Safety Code to withdraw life-sustaining treatment from N.T., to refrain and withhold from taking any action to cause the ventilator to be removed from N.T. and from making any final decision to discontinue medically appropriate life-sustaining treatment to N.T., and to continue to provide N.T. any medically appropriate pain management medication, medical procedures necessary to provide comfort, or any other health care provided to alleviate a patient's pain, unless such care would be medically contraindicated or contrary to the patient's or surrogate's clearly documented desire not to receive artificially administered nutrition or hydration. This order, which tracked the language of the trial court's emergency order, became effective immediately and provides it will continue in force and effect until a final decision by this court in this interlocutory appeal or until further orders of this court. In accordance with the court's expedited-briefing order, the Torres Parties filed their

2

brief the next day (October 6, 2020) and the Medical Providers filed their brief the following day.

## The Torres Parties' Claims

The Torres Parties allege on appeal that they are asserting the following claims against the Medical Providers in the trial court: (1) a request under the Texas Declaratory Judgements Act for a declaration that section 671.001 of the Texas Health and Safety Code violates the Torres Parties' due-process rights because the statute is vague;[1] (2) a claim under title 42, section 1983 of the United States Code based on the Medical Providers' alleged violation of the Torres Parties' rights to freedom of religious expression and religious liberties under First Amendment to the United States Constitution and under article 1, section 6 of the Texas Constitution by allegedly interfering with the Torres Parties' religious belief that, even though N.T. is brain dead, he still is a human person, alive with a full body, soul, and spirit given by God;[2] (3) a request under the Texas Declaratory Judgments Act for a declaration that section 166.046 of the Texas Health and Safety Code on its face or as applied violates the Torres Parties' substantive and procedural due-process rights under the United States Constitution and the Texas Constitution;[3] (4) a claim under title 42, section 1983 of the United States Code based on the Medical Providers' alleged violation of the Torres Parties' substantive and procedural due-process rights under the United States Constitution and the Texas Constitution by failing to follow the committee-review process under section 166.046 of the Texas Health and Safety Code after the Torres Parties

---

[1] *See* Tex. Health & Safety Code Ann. § 671.001.

[2] *See* U.S. Const. Amend I; Tex. Const. art. 1, §6; 42 U.S.C. §1983.

[3] *See* U.S. Const. Amend XIV; Tex. Const. art. 1, §19; Tex. Health & Safety Code Ann. § 166.046; Tex. Civ. Prac. & Rem. Code Ann. § 37.001, et seq.

invoked section 166.046;[4] (5) a request under the Texas Declaratory Judgments Act for a declaration that the Medical Providers are violating the Torres Parties' substantive and procedural due process rights;[5] (6) a claim that the Medical Providers are violating Mario and Ana Torres's fundamental due-process rights as parents to the care, custody, and control of their child, N.T.;[6] and (7) a request under the Texas Declaratory Judgments Act for a declaration that section 671.001, either on its face or as applied, violates the Torres Parties' due-process rights and free-exercise-of-religion rights under the United States Constitution and the Texas Constitution.[7] We presume for the sake of argument that the Torres Parties pleaded all of these claims in the trial court. We also presume for the sake of argument that the Medical Providers' conduct fairly may be characterized as state action or fairly attributable to the state.[8]

## Legal Standard

The purpose of a temporary injunction is to preserve the status quo of the subject matter of the litigation pending a trial on the merits..[9] A temporary injunction is an extraordinary remedy and does not issue as a matter of right.[10] To

---

[4] *See* U.S. Const. Amend XIV; Tex. Const. art. 1, §19; 42 U.S.C. §1983; Tex. Health & Safety Code Ann. § 166.046.

[5] *See* U.S. Const. Amend XIV; Tex. Const. art. 1, §19; Tex. Civ. Prac. & Rem. Code Ann. § 37.001, et seq.

[6] *See In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019).

[7] *See* U.S. Const. Amend XIV; U.S. Const. Amend I; Tex. Const. art. 1, §6; Tex. Const. art. 1, §19; Tex. Health & Safety Code Ann. § 671.001; Tex. Civ. Prac. & Rem. Code Ann. § 37.001, et seq.

[8] See *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S. Ct. 2744, 2747, 73 L.Ed.2d 482 (1982).

[9] *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Appellants assert that the status quo in need of injunctive protection in the present case is the life of N.T., which they claim will cease if Texas Children's Hospital is permitted to disconnect the ventilator.

[10] *Id*.

obtain a temporary injunction, the applicant must plead and prove (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim.[11] Whether to grant or deny a request for a temporary injunction falls within the trial court's discretion, and we will not reverse its decision absent a clear abuse of discretion.[12]

## Evidence

The record before this court contains little, if any, conflicting evidence. The evidence in the record shows that when N.T. arrived at Texas Children's Hospital, The Woodlands, there were no signs of neurological life. Because N.T. was hypothermic (excessively cold), a formal determination of neurological death was not made at that time.

Two brain-death tests followed. When performed on September 27, 2020, the first brain-death exam demonstrated no higher brain function and no brainstem reflexes. An apnea test also was performed. The procedure involved removing the ventilator from N.T., while providing oxygen, for ten minutes. During the procedure, N.T. took no breath and his carbon dioxide levels rose to a level that confirmed absent breathing and absent brainstem function. N.T. was not declared dead at that time because Texas Children's Hospital's procedures require a second brain-death exam.

The record reflects that N.T. had been brain dead due to the irreversible cessation of all spontaneous brain function at least since September 27, 2020, when the first brain-death exam showed positive for brain death.[13] The Torres Parties wanted to transfer N.T. to another hospital. Over the next few days (September 28

---

[11] *Id.*

[12] *Butnaru*, 84 S.W.3d at 204; *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993).

[13] *See* Tex. Health & Safety Code Ann. § 671.001(b).

and 29, 2020), Texas Children's Hospital contacted three other hospitals and requested to transfer N.T. to their respective facilities. All three hospitals denied the request. The testifying doctor opined that the reason for the denial was that "[N.T.'s] physical exam and his injury indicated that he was brain dead" and they "did not believe they had anything to offer since [N.T.'s] exam was consistent with brain death."

The first exam was performed at Texas Children's Hospital, The Woodlands. After no other facility was found that would accept transfer, Texas Children's Hospital agreed to transfer N.T. internally to its "separate facility with separate physicians" in the Texas Medical Center.

The second brain-death exam, performed on N.T. on September 30, 2020, by different physicians, confirmed that N.T. was positive for brain death. N.T.'s treating physician then declared N.T. dead. (The denials of the requests to transfer N.T. to a hospital outside of the Texas Children's Hospital system, which occurred before that, were not because N.T. had been declared dead.)[14] The trial court heard testimony that there was no chance of any improvement in N.T.'s condition. N.T.'s treating physician testified that N.T. is not in a coma or a vegetative state from which he might awaken, and N.T. has no signs of life. N.T.'s treating physician testified that "[s]ince [N.T.] meets the neurologic definition of death, nothing can be a life sustaining treatment. The ventilator is merely providing oxygen which the heart and liver and kidneys are consuming, so his organs continue to function." N.T.'s treating physician agreed it is accurate to say that N.T. still has a heartbeat, pulse, and many of his vital organs are still functioning. He further testified that

---

[14] The Torres Parties assert that the second brain death exam was performed in violation of the trial court's temporary restraining order. The record reflects the trial court struck out the provision that the Medical Providers were restrained from "any additional medical testing" without the Torres Parties' consent.

N.T.'s brain is the one that matters and it is not functioning. He also testified that no other organs are really functioning well. There was no evidence presented contradicting the testimony of N.T.'s treating physician that N.T. is deceased.

## Unconstitutionally-Vague Argument as to Section 671.001

The Torres Parties assert that section 671.001 of the Texas Health and Safety Code violates their due-process rights because the statute is vague. If a statute forbids or requires the doing of an act in terms so vague that people of common intelligence necessarily must guess at the statute's meaning and differ as to its application, the statute violates the Fourteenth Amendment's Due Process Clause.[15] In the parts of section 671.001 at issue in today's case, the statute forbids or requires the doing of an act in only one instance — requiring that death be pronounced before artificial means of supporting a person's respiratory and circulatory functions may be terminated.[16] The terms of this requirement are not so vague that people of common intelligence necessarily must guess at the statute's meaning and differ as to its application.[17] Based on the record in this case, the trial court did not abuse its discretion by impliedly determining that the Torres Parties have not shown a probable right to relief based on their claim that section 671.001 of the Texas Health and Safety Code violates their due-process rights because the statute is vague.[18]

## Argument as to Alleged Religious Belief (Definition of Death)

The Torres Parties also assert a claim under title 42, section 1983 of the United States Code based on the Medical Providers' alleged violation of the Torres

---

[15] *See Musslewhite v. State Bar of Texas*, 786 S.W.2d 437, 441 (Tex. App.—Houston [14th Dist.] 1990, writ denied).

[16] *See* Tex. Health & Safety Code Ann. § 671.001.

[17] *See Musslewhite*, 786 S.W.2d at 441.

[18] *Id.*

Parties' rights to freedom of religious expression and religious liberties under the First Amendment to the United States Constitution and under article 1, section 6 of the Texas Constitution by allegedly interfering with the Torres Parties' religious belief that, even though N.T. is brain dead, he still is a human person, alive with a full body, soul, and spirit given by God. The Torres Parties presented no evidence to the trial court that they hold this religious belief. Mario Torres testified it was up to the Lord to take N.T. and they are convinced N.T. is alive. Ana Torres testified that God needs time to heal N.T. and only God can take life away. Based on the record in this case, the trial court did not abuse its discretion by impliedly determining that the Torres Parties have not shown a probable right to relief based on this claim.[19]

### Due-Process Challenges as to Section 166.046

The Torres Parties assert that section 166.046 of the Texas Health and Safety Code, on its face or as applied, violates the Torres Parties' substantive and procedural due-process rights under the United States Constitution and the Texas Constitution.[20] The Medical Providers presented evidence to the trial court that an irreversible cessation of all of N.T.'s spontaneous brain function has occurred and that in the announced opinion of a physician, according to ordinary standards of medical practice, an irreversible cessation of all of N.T.'s spontaneous brain function has occurred.[21] The Torres Parties do not dispute either of these points. Under the unambiguous language of section 671.001 of the Texas Health and

---

[19] *See Citizens, Inc. v. Riley*, No. 03-19-00560-CV, 2020 WL 5507281, at *5 (Tex. App.—Austin Aug. 31, 2019, no pet.) (mem. op.).

[20] *See* U.S. Const. Amend XIV; Tex. Const. art. 1, §19; Tex. Health & Safety Code Ann. § 166.046.

[21] *See* Tex. Health & Safety Code Ann. § 671.001(b).

Safety Code, this undisputed evidence proves that N.T. is dead.[22] Likewise, under the plain text of section 166.046 of the Texas Health and Safety Code, the statute's procedures for determining whether and when a health care facility and its physicians may stop providing life-sustaining treatment to a patient do not apply after a patient has died, because no life-sustaining treatment can be given to a dead person.[23] Thus, section 166.046 of the Texas Health and Safety Code does not apply to the Medical Providers' removal of a ventilator in this case.[24] Based on the record, the trial court did not abuse its discretion by impliedly determining that the Torres Parties have not shown a probable right to relief based on their claim that section 166.046 of the Texas Health and Safety Code on its face or as applied violates the Torres Parties' substantive and procedural due-process rights under the United States Constitution and the Texas Constitution.[25]

## Remaining Arguments

The Torres Parties assert that (1) the Medical Providers allegedly violated their substantive and procedural due-process rights under the United States Constitution and the Texas Constitution by, among other things, failing to follow the committee-review process under section 166.046 of the Texas Health and Safety Code after the Torres Parties invoked section 166.046; (2) the Medical Providers allegedly violated Mario and Ana Torres's fundamental due-process rights as parents to the care, custody, and control of their child; and (3) that section 671.001, either on its face or as applied, violates the Torres Parties' due-process rights and free-exercise-of-religion rights under the United States Constitution and

---

[22] *See id*. § 671.001(b), (c).

[23] *See* Tex. Health & Safety Code Ann. § 166.046.

[24] *See id*. §§ 671.001, 166.046.

[25] *See* U.S. Const. Amend XIV; Tex. Const. art. 1, §19; Tex. Health & Safety Code Ann. § 166.046.

the Texas Constitution.[26] As to these due-process arguments, the Torres Parties rely on N.T.'s fundamental right to life and liberty and on Mario and Ana Torres's fundamental right as parents to the care, custody, and control of their children. The Torres Parties have not cited a case in which a court held that a dead person has a right to life or liberty or that parents have a fundamental right to the care, custody, and control of a deceased child. The Torres Parties do not dispute that an irreversible cessation of all of N.T.'s spontaneous brain function has occurred or that in the announced opinion of a physician, according to ordinary standards of medical practice, an irreversible cessation of all of N.T.'s spontaneous brain function has occurred. The Torres Parties have not argued or presented evidence of any basis for concluding that N.T. has not suffered an irreversible cessation of all spontaneous brain function. The Torres Parties rely upon *T.L. v. Cook Children's Medical Center*, but that case is not on point because the child in that case, though terminally ill, was not dead.[27] The Torres Parties have not presented evidence that any health care providers are willing to accept a transfer of N.T. or that a viable option exists for N.T. to receive hospice-care services at a hospice facility or in the Torres home. As to the free-exercise-of-religion arguments, the Torres Parties did not present evidence in the trial court as to any religious beliefs or practices that section 671.001 allegedly affects.[28] Based on the record in this case, the trial court did not abuse its discretion by impliedly determining that the

---

[26] *See* U.S. Const. Amend XIV; U.S. Const. Amend I; Tex. Const. art. 1, §6; Tex. Const. art. 1, §19; Tex. Health & Safety Code Ann. § 166.046.

[27] *See* No. 02-20-00002-CV, 2020 WL 4260417, at 47–52 (Tex. App.—Fort Worth Jul. 24, 2020, pet. filed).

[28] *See* U.S. Const. Amend I; Tex. Const. art. 1, §6; Tex. Health & Safety Code Ann. § 671.001.

Torres Parties have not shown a probable right to relief based on these three claims.[29]

## Conclusion

The trial court did not abuse its discretion by impliedly determining that the Torres Parties have not shown a probable right to relief or by denying the Torres Parties' request for a temporary injunction. We affirm the trial court's order.

## Continuation of Emergency Order

The emergency order this court issued on October 5, 2020, shall continue in full force and effect until 5:00 p.m. on October 12, 2020.

PER CURIAM

Panel consists of Chief Justice Frost and Justices Wise and Bourliot.

---

[29] *See Citizens, Inc.*, 2020 WL 5507281, at *5.