George R. NEELY, Appellant,

v.

COMMISSION FOR LAWYER DISCIPLINE, Appellee.

No. 01–05–00377–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 4, 2006.

Rehearing Overruled April 19, 2006.

Daniel Richard Smith, Thomas H. Watkins, Elizabeth G. Bloch, Brown McCarroll, L.L.P., Austin, TX, for Appellant.

Linda A. Acevedo, Commission for Lawyer Discipline, Austin, TX, Christopher Benjamin Dove, Locke Liddell & Sapp, LLP, Jerald G. Molleston, State Bar of Texas, Houston, TX, Scott Hastings, Locke Liddell & Sapp LLP, Dallas, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

ELSA ALCALA, Justice.

Appellant, George R. Neely, appeals from a judgment that he engaged in professional misconduct in violation of rules 7.02(a), 7.03(a), 7.04(j), 7.05, and 7.07 of the Rules of Professional Conduct (Part VII). Trial was to the court, which also imposed disciplinary sanctions on Neely. In four issues, Neely challenges the legal and factual sufficiency of the evidence to support the trial court's findings of professional misconduct and to support the sanctions imposed. Neely also contends that the trial court's interpretation and application of Part VII violated Neely's free speech rights under the First Amendment of the United States Constitution. We conclude that sufficient evidence supports both the trial court's professional misconduct ruling and the sanctions imposed by the trial court and that the trial court did not violate Neely's free speech rights under the First Amendment. Therefore, we affirm.

## Background

On October 15, 2003, Neely and another attorney agreed to represent Gerald Harris "and others to be signed up by either you or me" for claims against Village Builders, a homebuilder, for alleged structural problems to homes in Sugar Land. Neely arranged a meeting of "interested homeowners" and in, November, 2003, published a notice about the meeting in the advertisement section of *The Greatwood Monthly,* a local newspaper. The first notice appeared, as follows:

**Greatwood Homeowners:**

A meeting of interested homeowners will be held at the Recreational Center, 7225 Greatwood Parkway, Sugar Land, Texas 77479 on Friday, November 21, 2003 from 6:30 p.m. - 9:00 p.m. to discuss the structural problems of houses in your neighborhood, including foundation problems, which were built by VILLAGE BUILDERS. All Greatwood homeowners are invited to attend the [sic] exchange information with your neighbors concerning structural problems to your houses.

For additional information call
George R. Neely at
713-521-9666

The meeting was held on November 23, 2003. At the meeting, Neely placed a stack of his resumes on a table available to any interested attendees. During the meeting, Neely explained that he might file a class action lawsuit against Village Builders and that he handled his cases on contingency. Neely told one attendee that attendees had the option of hiring Neely as their counsel. Further, Neely joked with another attendee by stating that "maybe you should have hired me." After the meeting, at least two attendees received follow-up calls from Neely's co-counsel regarding filing claims against Village Builders. Neely, or his co-counsel, also signed up at least three clients after the meeting was held. At least two of those clients attended the meeting. Village Builders filed a grievance against Neely, complaining about the notice and the meeting. On March 23, 2004, Neely filed a class action lawsuit against Village Builders.

Subsequently, in June, 2004, Neely ran a second notice in *The Greatwood Monthly*, stating that a class action lawsuit had been filed against Village Builders. The second notice appeared, as follows:

> **Greatwood**
> **Homeowners:**
>
> A class action lawsuit has been filed against
>
> Lennar Homes of Texas Sales and Marketing, Limited d/b/a Village Builders
>
> in the 400th District Court of Fort Bend County, Texas.
>
> This Class Action Lawsuit will seek recovery of damages for all Homeowners who qualify as Class Members.
>
> You may review the public filings at the Courthouse or call
>
> George R. Neely
> at 713.521.9666
>
> in Houston, Texas to obtain further information about the lawsuit.

In July, 2004, Neely, who was having personal problems and needed the cases financed, hired Caddell & Chapman to take over the case. On August 4, 2004, Caddell & Chapman amended the original petition by dropping the assertion of the class action lawsuit, opting instead to pursue individual cases.

On October 7, 2004, appellee, Commission for Lawyer Discipline (the Commission), filed a disciplinary action against Neely. The case was tried to the bench on March 17, 2005, and the trial court signed its final judgment of partially probated suspension on March 31, 2005, imposing sanctions against Neely for professional misconduct in violation of rules 7.02(a)(1)—(2); 7.03(a); 7.04(b)(1), (b)(3), (j); 7.05(a)(3), (b)(1)—(2); and 7.07(a), (b)(1), (b)(3)—(4) of the Disciplinary Rules of Professional Conduct. The sanctions included a three-year suspension from practicing law, including a nine-month active suspension. The trial court also awarded attorney's fees to the Commission.

## Sufficiency of the Evidence

In his issues one and three, Neely challenges the sufficiency of the evidence. Neely contends that Part VII does not apply to the notices at issue in this case because the notices do not propose a commercial transaction or professional employment and thus are not commercial speech. The Commission contends that the notices were advertisements subject to Part VII because Neely was attempting to solicit business by notifying the public of a meeting that was subsequently held by Neely and by notifying the public of a lawsuit Neely had filed. We conclude that sufficient evidence supports the trial court's ruling that Part VII applies to Neely because one of the notices constitutes commercial speech as defined by the United States Supreme Court. More specifically, we conclude that rule 7.02 of the Disciplinary Rules of Professional Conduct applies to that notice and to Neely.

## A. Standard of Review

A request for findings of fact and conclusions of law is not required to question the sufficiency of the evidence. *Pruet v. Coastal States Trading, Inc.*, 715 S.W.2d 702, 704 (Tex.App.-Houston [1st Dist.] 1986, no writ). However, when no party requests findings of fact or conclusions of law, as here, "[i]t is therefore implied that the trial court made all the findings necessary to support its judgment." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). Accordingly, we must presume that the trial court found all questions of fact in support of the judgment and affirm the judgment if it can be upheld on any basis. *Point Lookout W., Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex.1987); *see also Worford*, 801 S.W.2d at 109 (stating that appellate court must affirm judgment "if it can be upheld on any legal theory that finds support in the evidence"). To determine whether evidence supports the judgment and the implied findings of fact, we generally consider "only that evidence most favorable to the issue and ... disregard entirely that which is opposed to it or contradictory in its nature," *Worford*, 801 S.W.2d at 109, unless "there is no favorable evidence ..., or if contrary evidence renders supporting evidence incompetent ... or conclusively establishes the opposite." *City of Keller v. Wilson*, 168 S.W.3d 802, 810–11 (Tex.2005).

## B. Professional Misconduct

Part VII applies only to commercial speech. *Texans Against Censorship, Inc. v. State Bar of Tex.*, 888 F.Supp. 1328, 1342–1343 (E.D.Tex.1995), *aff'd* 100 F.3d 953 (5th Cir.1996). The comment to Part VII states the following:

The Rules within Part VII are intended to regulate communications made for the purpose of obtaining professional employment. They are not intended to affect other forms of speech by lawyers, such as political advertisements or political commentary, except insofar as a lawyer's effort to obtain employment is linked to a matter of current public debate.

TEX. DISCIPLINARY R. PROF'L CONDUCT 7.02 cmt. 1, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005) (TEX. STATE BAR R. art. X § 9). The Supreme Court has similarly defined commercial speech as that which proposes a commercial transaction between the sender and the receiver of the message; it is speech "related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561–62, 100 S.Ct. 2343, 2349, 65 L.Ed.2d 341 (1980). Whether speech is commercial or noncommercial in nature is a "common-sense" determination. *Hudson*, 447 U.S. at 562, 100 S.Ct. at 2349. Specifically, "lawyer advertising is commercial speech." *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623, 115 S.Ct. 2371, 2375, 132 L.Ed.2d 541 (1995).

For a legal communication to be subject to Part VII, it must be commercial speech that proposes professional employment by suggesting "[t]o the public, or a specific individual, that the lawyer's professional services are available for hire." *Texans Against Censorship*, 888 F.Supp. at 1344. Specifically, Part VII does not apply when "anyone reading [the communication] ... would not likely think it was published for the purpose of obtaining professional employment." *Id.* Thus, to determine whether the communication is commercial speech within the ambit of Part VII, a reviewing court must first determine from the face of the notice whether there is any evidence that the attorney is proposing a commercial transaction. *Id.* at 1342. If the court deter-

mines from the face of the communication that it is not commercial speech, then Part VII does not apply. *Id.* at 1343. If there is evidence, however, from the face of the communication, that the attorney is proposing a commercial transaction and thus the speech is commercial, the reviewing court may look to see if Part VII applies by considering evidence that the communication was "made for the purpose of obtaining professional employment." *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 7.02 cmt. 1.

Neely contends that the notices, on their faces, are not subject to Part VII and thus were not "advertising" Neely's services to bring them within the ambit of Part VII. Neely contends that *Texans Against Censorship* is dispositive of this issue because Neely's notices do not suggest that "Neely is a lawyer, or that he has made his professional services available for hire." In *Texans Against Censorship*, an attorney published a notice in the *Pasadena Citizen* concerning whether the current system of electing state judges in Texas should be changed.[1] 888 F.Supp. at 1343. Although the attorney admitted that he hoped to generate business as a result of publishing the notice, it did not propose a commercial transaction on its face. *Id.* at 1344. Because a reader of the advertisement would not likely think that the attorney intended to obtain clients, the court held that the advertisement was noncommercial speech,

and Part VII did not apply.[2] *Id.* But when the message conveyed by the communication suggests that the lawyer's professional services are available for hire, then the communication is commercial speech that must meet the requirements of Part VII. *Id.*

 Misleading commercial speech receives no First Amendment protection. *See Hudson,* 447 U.S. at 563, 100 S.Ct. at 2350 (stating, "government may ban forms of communication more likely to deceive the public than to inform it."). Therefore, "the government may freely regulate commercial speech that ... is misleading." *Went For It,* 515 U.S. at 623–24, 115 S.Ct. at 2376. Rule 7.02 of the Disciplinary Rules states the following:

(a) A lawyer shall not make or sponsor a false or misleading communication about the qualifications of any lawyer or firm. A communication is false or misleading if it:

(1) ... omits a fact necessary to make the statement considered as a whole not materially misleading[.]

Thus, an omission may be materially misleading commercial speech subject to free regulation by the government. *See Comm'n for Lawyer Discipline v. C.R.,* 54 S.W.3d 506, 516 (Tex.App.-Fort Worth 2001, pet. denied). "Whatever means are used to make known a lawyer's services, statements about them should be truthful

---

1. The notice stated the following:

 Some judges should be appointed and some elected. Members of the Texas Supreme Court, Texas Court of Criminal Appeals and appellate Courts should be chosen by the Governor and confirmed by the Senate. Appointed judges should seek voter approval every two years. State district judges should be elected in non-partisan elections. A constitutional amendment will be required to change the current judicial selection process. Let Me Know Your Thoughts! ... Paid for by Jim S. Adler, Attorney.

 Concerned about Judicial Reform. (Not Board Certified by the Texas Board of Legal Specialization).
 *Texans Against Censorship, Inc. v. State Bar of Tex.,* 888 F.Supp. 1328, 1343 n. 18 (E.D.Tex. 1995), *aff'd* 100 F.3d 953 (5th Cir.1996).

2. Furthermore, unlike this case, the notice consisted of political commentary to which Part VII does not apply. *See* TEX. DISCIPLINARY R. PROF. CONDUCT 7.02 cmt. 1, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005) (TEX. STATE BAR R. art. X § 9).

and nondeceptive. Sub-paragraph (a)(1) [of rule 7.02] recognizes that statements can be misleading both by what they contain and by what they leave out. Statements that are false or misleading for either reason are prohibited." Tex. Disciplinary R. Prof. Conduct 7.02 cmt. 2, 3.

■■■ A notice or advertisement regarding qualifications or services of a lawyer or firm is inherently misleading when it omits information regarding the identity of the lawyer or firm and is not susceptible to reasonable verification by the public. *See Rodgers v. Comm'n for Lawyer Discipline,* 151 S.W.3d 602, 612–13 (Tex.App.-Fort Worth 2004, pet. denied) (holding that advertisement that did not identify lawyer was inherently misleading because "only way a person could verify which attorney's office he would be speaking to was to actually connect to that attorney's office" and because "potential consumer has no name or other information to help her evaluate whether she wants to contact a particular attorney prior to being connected to that attorney's office"); *see also C.R.,* 54 S.W.3d at 517 (holding fact question existed as to whether ad for "Accidental Injury Hotline" placed by attorney in yellow pages section entitled "Attorney Referral and Information Service" rather than section entitled "Attorneys" contained false and misleading information); *Musslewhite v. State Bar of Tex.,* 786 S.W.2d 437, 442 (Tex.App.-Houston [14th Dist.] 1990, writ denied) (holding advertisement referencing "group of internationally renowned trial lawyers" and team "currently having discussions with a number of United Kingdom solicitors with a view to filing suit in … Texas to obtain maximum damages" misleading because it did not identify lawyers and suggested that team already had clients when it did not).

Thus, we determine in this case whether there was sufficient evidence for the trial court to find both that the notices on their faces proposed a commercial transaction and that Neely published the notices for the purpose of obtaining professional employment. We next address whether sufficient evidence supports the trial court's determination that the omission of information was materially misleading so as to bring the notices within the ambit of rule 7.02(a).

## C. Evidence of Proposing Commercial Transaction on the Face of the Notices

■■■ We evaluate the advertisements using their commonsense meanings to assess whether a notice proposes a commercial transaction and is thus commercial speech. *See Hudson,* 447 U.S. at 562, 100 S.Ct. at 2349. We need not decide whether the first notice suggests a commercial transaction because we conclude that the second notice suggests a commercial transaction on its face by indicating that a class action had been filed, seeking recovery of damages against a specific defendant, Village Builders, for specific plaintiffs, homeowners who qualified as class members. This advertisement is unlike the advertisement in *Texans Against Censorship* that contained only political commentary with no indication that the purpose of the notice was to obtain professional employment. 888 F.Supp. at 1343 n. 18. This notice suggests that a class action had already been certified and therefore the case was applicable to qualified homeowners. We cannot conclude that readers of the second notice would not likely think it was published for the purpose of obtaining professional employment. *Id.,* 888 F.Supp. at 1344. We conclude that there was sufficient evidence for the trial court to find that the notice was disseminated

for the purpose of obtaining professional employment and violated rule 7.02(a), and contrary evidence neither renders the evidence in support of the trial court's judgment incompetent nor conclusively establishes the opposite of the trial court's judgment. *See Keller,* 168 S.W.3d at 810.

### D. Further Evidence of Purpose of Obtaining Professional Employment

 Neely contends that the notices are not communications about his qualifications or services disseminated for the purpose of obtaining professional employment because the purpose of the meeting was merely for information gathering. Because we conclude that the second notice on its face displays evidence of proposing a commercial transaction and is thus commercial speech, which brings it within the ambit of Part VII, we consider evidence of Neely's intent to obtain professional employment.

 We conclude that *Texans Against Censorship* imposes a threshold requirement that there be evidence from the face of the communication that the attorney is proposing a commercial transaction and thus the communication is commercial speech within the ambit of Part VII. 888 F.Supp. at 1343. *Texans Against Censorship* does not, however, reach the issue of whether a reviewing court, after determining that the attorney communication proposes a commercial transaction, may consider extraneous evidence to determine whether Part VII was violated.[3] *Id.* at 1344. We conclude that because Part VII is "intended to regulate communications made for the purpose of obtaining professional employment," a reviewing court, after determining from the face of the communication that an attorney is proposing a

commercial transaction and thus the speech is commercial, may consider extraneous evidence that the communication was "made for the purpose of obtaining professional employment" in violation of Part VII. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 7.02 cmt. 1.

The record shows the following evidence that Neely promulgated the notices for the purpose of obtaining professional employment: The trial court found it "very troubling" that Neely provided resumes at the meeting. These resumes list major case experience, including several lawsuits that Neely won with favorable recoveries for clients. Neely explained to the meeting attendees that he handled cases on a contingency fee basis and that attendees had the option to hire him. He also joked with an attendee by stating that "maybe you should have hired me."

We also find the letter sent from Neely to co-counsel Tab Lawhorn on October 15, 2003, persuasive regarding their agreement to represent homeowners "in cases involving Village Builders and the homes built by them in the Greatwood subdivision in the Sugarland area" because it indicates an intent to obtain professional employment. Neely stated in the letter that "[i]ncluded in our representation will be Mr. and Mrs. Gerald Harris, and others *to be signed up* by either you or me." (Emphasis added). The first notice was published approximately two weeks after Neely drafted the letter.

Neely asserts that the "entire purpose of the meeting [with regard to the first notice] was to gather information and to investigate facts in order to determine whether there was a sufficient factual and legal basis for filing a class action against

---

**3.** The court did not reach this issue because it held that the attorney communication at issue in that case was noncommercial speech. *See*

*Texans Against Censorship,* 888 F.Supp. at 1344.

Village Builders." By Neely's own admission, therefore, he set up the meeting referenced in the first notice to determine whether he could certify a class and receive attorney's fees for a class action lawsuit, which would improve his chances for higher fees than for a single plaintiff case.[4] Although the class action was eventually dropped, the record shows that after the meeting, Neely signed up at least two clients on a contingency fee basis who had been present at the meeting. Further, the trial court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Keller*, 168 S.W.3d at 819. The trial court was thus entitled to disbelieve Neely and to make the determination that he published the notices for the purpose of solicitation rather than investigation. *See id.* We conclude that there was sufficient evidence for the trial court to find that Neely intended to obtain professional employment by informing potential clients of the meeting through the first notice.

### E. Materially Misleading Communication

■ Neely argues that his omission of information is not misleading because he did not intend the notices to help him obtain professional employment and did not consider either one of the notices to be advertisements. Because we conclude that there was sufficient evidence that Neely intended to seek professional employment, we will consider whether the second notice was materially misleading.

As set forth above, rule 7.02(a) prohibits misleading communications from a lawyer about that lawyer's qualifications or services which omit facts necessary to make the statement considered as a whole not materially misleading. We need only address the second notice because we conclude that there was sufficient evidence for the trial court to find that it proposed a commercial transaction. Because the notice omits information regarding Neely's identity as an attorney and is not susceptible to reasonable verification by the public, we conclude that it is materially misleading. *See Rodgers*, 151 S.W.3d at 613. Although the notice contains Neely's name and phone number, it is inherently misleading because the only way a person could know that Neely was an attorney would be to call and ask him, and there was no way for a person to evaluate whether he wanted to speak to an attorney before contacting Neely's office. *See id.*

The second notice is also inherently misleading because it implies that a class had already been certified and that members of that class would be eligible for damage recovery: "This Class Action Lawsuit will seek recovery of damages for all homeowners who qualify as Class Members." In fact, the class had not been certified, and the named plaintiffs had signed contingency fee agreements. The second notice also implies that the reader would be calling the courthouse rather than an attorney to get information regarding the class action lawsuit: "You may review the public filings at the Courthouse or call George R. Neely." This is also inherently misleading because the only way a person could verify that he or she was speaking with an attorney would be to call Neely and ask. *See id.* We therefore conclude that there was sufficient evidence that the second notice was misleading in violation of rule 7.02(a).

---

4. For class action lawsuits, the trial court determines the amount of attorney's fees awarded by multiplying the number of hours reasonably worked by a reasonable hourly rate. Tex.R. Civ. P. 42(i)(1). The attorney's fee award must be in the range of 25% to 400% of that total. *Id.* Thus, the award may be higher than the attorney's fees for a single plaintiff case.

Viewed in the light most favorable to the judgment, we conclude that there was sufficient evidence that the second notice was published for the purpose of obtaining professional employment, and that it was a misleading communication about Neely's qualifications or services in violation of rule 7.02(a). Because we find that there was sufficient evidence to support the trial court's ruling that Neely violated rule 7.02(a), we need not address whether he violated any other provisions of Part VII.

We overrule Neely's issues one and three.

### Violation of First Amendment Rights and Severity of Sanctions

■■■■ In issues two and four, Neely contends that the trial court's interpretation and application of Part VII infringed his free speech rights protected by the First Amendment of the United States Constitution. Because we conclude that the second notice was materially misleading commercial speech, we conclude that Neely's free speech rights were not violated.

■■■■■ Neely contends that the notices were noncommercial speech, or, alternatively, that his free speech rights to protected commercial speech were violated under the *Central Hudson* test, because the commercial speech did not concern unlawful activity nor was it misleading.[5] *Hudson*, 447 U.S. at 566, 100 S.Ct. at 2351. Because we conclude that the notice was misleading commercial speech, the *Central Hudson* test, involving scrutiny of restrictions on protected commercial speech, does not apply. *See id.* More-

over, "rule 7.02(a) bans only misleading or false commercial speech, and thus is not constitutionally infirm." *Texans Against Censorship*, 888 F.Supp. at 1350. We thus conclude that the trial court's interpretation and application of rule 7.02(a) did not violate Neely's First Amendment right to free speech.

■■■■ Neely further contends that the evidence does not support the severity of sanctions awarded against him under the Rules of Disciplinary Procedure. We review the sanctions imposed on an attorney for professional misconduct for abuse of discretion. *See Curtis v. Comm'n for Lawyer Discipline*, 20 S.W.3d 227, 234–35 (Tex.App.-Houston [14th Dist.] 2000, no pet.). A trial court "abuses its discretion only when it acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding principles." *See Eureste v. Comm'n for Lawyer Discipline*, 76 S.W.3d 184, 202 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Further, "[t]he trial court has broad discretion to determine whether an attorney guilty of professional misconduct should be reprimanded, suspended, or disbarred." *State Bar v. Kilpatrick*, 874 S.W.2d 656, 659 (Tex.1994). The trial court may consider the following factors to determine appropriate sanctions:

A. The nature and degree of the Professional Misconduct for which the Respondent is being sanctioned;

B. The seriousness of and circumstances surrounding the Professional Misconduct;

C. The loss or damage to clients;

D. The damage to the profession;

---

5. The *Central Hudson* test is a three-part analysis that applies to commercial speech that does not concern illegal activity and is not misleading. A court must determine (1) whether the asserted governmental interest in regulating the speech is substantial, (2) whether the regulation directly advances the governmental interest asserted, and (3) whether the regulation is more extensive than necessary to serve that interest. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980).

E. The assurance that those who seek legal services in the future will be insulated from the type of Professional Misconduct found;

F. The profit to the attorney;

G. The avoidance of repetition;

H. The deterrent effect on others;

I. The maintenance of respect for the legal profession;

J. The conduct of the Respondent during the course of the Committee action;

K. The trial of the case; and

L. Other relevant evidence concerning the Respondent's personal and professional background.

TEX.R. DISCIPLINARY P. 3.10, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (Vernon 2005). Further, the trial court may consider the attorney's prior disciplinary record to assess punishment. *Id.*

The trial court imposed a three-year suspension of legal practice on Neely, with nine months of active suspension and two years three months of probated suspension. The trial judge expressly stated that he had considered Neely's disciplinary history and conduct in imposing this sanction. Neely had been disciplined three times before the imposition of the current sanction, as follows: (1) private reprimand for not responding to a grievance, in violation of Disciplinary Rule of Conduct 8.01(b); (2) eight-month probated suspension for taking more fees out of a client's settlement than the amount to which Neely and the client agreed, in violation of Disciplinary Rule of Conduct 1.02(a)(1)(2); and (3) 18–month probated suspension for bringing a frivolous lawsuit, in violation of Disciplinary Rules of Conduct 3.01, 8.04(a)(1), 8.04(a)(3), and 8.04(a)(12).

## A. Factors Specific to Clients and Case

Factors C, F, G, J, and K, which are specific to clients in a particular case weigh heavily in favor of the sanctions imposed upon Neely, specifically factor G, the avoidance of repetition. Neely had already been sanctioned three times for professional misconduct: the first, a private reprimand, and the second and third, probated suspensions. We conclude that the trial court did not abuse its discretion by imposing a stricter sanction on Neely in order to avoid repetition of his professional misconduct. We further conclude that there was sufficient evidence of factor F, the profit to the attorney. As set forth above, Neely signed up clients after the meeting pursuant to contingency fee agreements. This was sufficient evidence for the trial court to conclude that Neely profited as a result of his professional misconduct.

## B. Factors Affecting the Public

Factors A, B, and E, which affect the public, also favor the sanctions imposed upon Neely. The disciplinary rules advance a substantial government interest in protecting the public from false, deceptive or misleading lawyer communications. *Texans Against Censorship*, 888 F.Supp. at 1348–49; *Rodgers*, 151 S.W.3d at 612. The public is entitled to obtain information regarding the identity of the lawyer who publishes a notice and to be able to verify that information. *Rodgers*, 151 S.W.3d at 613. Therefore, factors A and B support the trial court's imposition of sanctions. Further, we conclude that factor E supports imposing an active nine-month suspension on Neely because it will help assure that the public will be protected from this type of professional misconduct in the future.

## C. Factors Affecting the Legal Profession

Factors D and H, which affect the legal profession, favor the sanctions imposed upon Neely. We conclude that whenever an attorney has consistently violated the disciplinary rules, this damages the legal profession by generally affecting the reputation of the profession. Further, by imposing an active suspension on Neely, the punishment could deter other attorneys from similar conduct in the future.

## D. Other Evidence of Neely's Professional and Personal Background

As set forth above, Neely had two prior probated suspensions, one of which expired three weeks before he published the notices. The trial court awarded sanctions to the Commission in the form of a three-year suspension, only nine months of which were active.[6] We conclude that in light of Neely's prior violations, the trial court did not abuse its discretion by imposing the sanction it did.

Weighing all the factors for imposition of sanctions, we conclude that the trial court was well within its discretion in imposing the sanctions on Neely. Accordingly, sufficient evidence supports the trial court's imposition of sanctions.

We overrule Neely's issues two and four.

## Conclusion

We affirm the judgment of the trial court.

---

**6.** The trial court also awarded attorney's fees to the Commission, which Neely does not contest.