COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ANTHONY G. BUZBEE AND THE BUZBEE LAW FIRM, | § | No. 08-20-00138-CV |
| | § | Appeal from the |
| Appellants, | § | Court District Court |
| v. | § | of El Paso County, Texas |
| ROBERTO CANALES, M.D. AND ROBERTO CANALES, M.D., P.A., | § | (TC#2020DCV0691) |
| Appellees. | § | |

## **O P I N I O N**

In this interlocutory appeal, Appellants, Anthony G. Buzbee ("Buzbee") and the Buzbee Law Firm ("the Firm")(collectively "Buzbee"), appeal from the denial of a motion to dismiss filed pursuant to the Texas Citizens' Participation Act ("TCPA" or the "Act"). *See* Tex.Civ.Prac.& Rem.Code Ann. § 27.001, *et seq*. The motion sought expedited dismissal of a suit brought by Appellees, Roberto Canales M.D. and Roberto Canales, M.D., P.A. (collectively "Dr. Canales") against Buzbee for defamation and business disparagement in relation to advertisements Buzbee published in local newspapers and on social media. We affirm the trial court's order denying the motion to dismiss.

## **BACKGROUND**

According to Appellants, on August 31, 2019, three-year-old Ivanna Saucedo died

allegedly from complications related to an abnormal brain condition called hydrocephaly. After her death, Ivanna's parents, David and Mariana Saucedo, hired Appellants to pursue a medical malpractice claim against Dr. Canales and other El Paso medical providers who allegedly treated Ivanna.

According to Appellees, between February 13, 2020 and February 23, 2020, Buzbee published a series of legal advertisements in English and Spanish in local newspapers, including *The El Paso Times* and *El Diario*, as well as on Facebook and Instagram. The text of the newspaper ads appeared as follows:

**ATTENTION!
IMPORTANT!!**

If your child was injured
or died while receiving
treatment from
**Dr. Roberto Canales,**
we want to talk to you.

We are investigating claims
for parents whose children
died while undergoing
treatment by Dr. Canales
and the hospitals with whom he is affiliated
**Call us
immediately!**
We are seeking information
regarding your experience.

Following this text at the bottom of the ad in large and bold print, appeared "The Buzbee Law Firm" name, a telephone number, and a website address.

The Facebook ads contained essentially the same text but also included photographs. One Facebook ad contained a photograph of a male doctor wearing a white doctor's coat shrugging

with his hands up and making a facial expression suggesting he made a mistake. Additional text appearing across the image read: "Did Dr. Roberto Canales Kill or Hurt Your Child? Call 1-800-[xxx-xxxx]." Another Facebook ad depicted a male doctor, who wore surgical scrubs and a surgical mask with a stethoscope draped around his neck, cupping the top of his head with his right hand as he solemnly gazed downward. In this ad the following text appeared across the image in Spanish: "Injured by Dr. Roberto Canales? Call 1-800-[xxx-xxxx]!" Each Facebook ad contained links to a landing page in which "The Buzbee Law Firm" name appeared along with the Firm's website address, phone and fax numbers, and an address for a Houston office, with instructions to call the Firm.

The Instagram ad contained a photograph with the words "Medical Malpractice" written in bold capital letters on a hospital chart, with a stethoscope appearing at the top of the picture and a gavel at the bottom. "The Buzbee Law Firm" was identified as the "sponsor" of the ad and a 1-800- phone number appeared inside the photograph and at the end of the text which was similar to the text in the newspaper ads, with instructions to call immediately. The ads are reproduced in full at the end of this opinion.

Dr. Canales filed suit against Buzbee on February 25, 2020, alleging the ads were defamatory, false, and misleading and they were disparaging to Dr. Canales' medical practice. Dr. Canales' petition included photographs of the ads as they appeared in the newspapers as well as computer screen-printouts of the ads that appeared on social media. After answering the suit, Buzbee filed a motion to dismiss pursuant to the TCPA, attaching twelve exhibits to its motion, including an affidavit by Anthony G. Buzbee. Buzbee's affidavit explained that "the bulk of [his firm's] practice for the last twenty years has been in a variety of personal injury cases, including

3

medical malpractice," and the Saucedos engaged him and his firm to pursue a medical malpractice claim against Dr. Canales and others. Buzbee also asserted in his affidavit the purpose of the ads was "to locate potential witnesses as part of our investigation into the Saucedo claims, and not to solicit professional employment with others." Among the exhibits was a notice of health-care claim sent on March 11, 2020 by Buzbee to Dr. Canales.

In his written response to the motion to dismiss, Dr. Canales argued the motion should be denied primarily because the ads sought professional employment and therefore constituted commercial speech that was exempt from the TCPA's expedited dismissal procedure. Buzbee filed a reply arguing the ads were published for investigative purposes and therefore constituted noncommercial speech to which the commercial-speech exemption did not apply. Buzbee also argued even if the advertisements constitute commercial speech, the TCPA's commercial-speech exemption was not broad enough to incorporate these ads. After a hearing held via zoom, the trial court denied the motion to dismiss in a written order without stating its reason.

## DISCUSSION

In four issues, Buzbee argues the trial court erred when it denied the TCPA motion to dismiss because: (1) Dr. Canales' legal action is based on or in response to the exercise of Buzbee's right to free speech on a matter of public concern; (2) Dr. Canales failed to establish by clear and specific evidence a prima facie case on each essential element in their claims; (3) Buzbee demonstrated an affirmative defense to Dr. Canales' claims; and (4) Dr. Canales failed to prove the advertisements were commercial speech or exempted from the TCPA's applicability.

### I.     STANDARD OF REVIEW

We interpret the TCPA and decide whether it applies to a suit *de novo*. *MVS Int'l Corp. v.*

4

*Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 190 (Tex.App.—El Paso 2017, no pet.)*; Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018); *see also Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019)("The text of the TCPA dictates the outcome of this case. We consider issues of statutory construction *de novo*."). When deciding whether to grant a TCPA motion, the court may consider the pleadings and any supporting and opposing affidavits. *In re Lipsky*, 460 S.W.3d 579, 587 (Tex. 2015)(*citing* TEX.CIV.PRAC.&REM.CODE ANN. § 27.006(a)). The pleadings and evidence are viewed in a light favorable to the non-movant. *Id.* The non-movant's pleading is the best evidence of the nature of its claims. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). "When it is clear from the [non-movant's] pleadings that the action is covered by the Act, the [movant] need show no more." *Id.*; *see also Adams v. Starside Custom Bldrs.*, 547 S.W.3d 890, 897 (Tex. 2018)(same). When the nonmovant asserts an exemption bars the TCPA's applicability, the nonmovant bears the burden of establishing the exemption applies. *Miller Weisbrod, L.L.P. v. Llamas-Soforo*, 511 S.W.3d 181, 189 (Tex.App.—El Paso 2014, no pet.).

## II.     ARE THE ADS EXEMPTED FROM THE TCPA'S EXPEDITED DISMISSAL PROCEDURE?

In his fourth issue, Buzbee contends the ads allegedly only sought information, not professional employment, and they therefore constitute noncommercial speech which falls outside of the TCPA's commercial-speech exemption. Alternatively, Buzbee contends even if the ads constitute commercial speech, none of the four elements necessary to the application of the TCPA's commercial-speech exemption are satisfied. We address each contention in turn.

### A.     Do the Ads Constitute Commercial Speech?

We have previously held that lawyer advertisements similar to the advertisements in this

case constitute commercial speech that is exempted from the Act's expedited dismissal procedure. *See Miller Weisbrod*, 511 S.W.3d at 181 (holding lawyer advertisement created "primarily to attract clients allegedly injured by Llamas" was "commercial speech and, thus, exempt" by TCPA). Buzbee distinguishes our holding in *Miller Weisbrod*, by pointing out that, unlike the ads in that case, his ads do not contain "magic language" or express solicitations for engagement, such as "you may have a claim" or "you may be entitled to compensation" that suggest a commercial transaction. He also argues evidence in this record establishes the only purpose of the ads was to obtain information, not to solicit employment. We find Buzbee's arguments unpersuasive.

The Supreme Court has defined commercial speech as speech whose purpose is to "propose a commercial transaction." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993). "[E]mploying a lawyer is one type of commercial transaction[.]" *Texans Against Censorship, Inc. v. State Bar of Texas*, 888 F.Supp. 1328, 1343 (E.D. Tex. 1995), *aff'd*, 100 F.3d 953 (5th Cir. 1996). In support of his contention that his ads did not solicit professional employment Buzbee relies on cases discussing the applicability of the Texas Disciplinary Rules of Professional Conduct to lawyer advertisements and which distinguish between commercial speech that is subject to regulation and noncommercial speech that is not. *See Texans Against Censorship*, 888 F.Supp. at 1343 (rules governing lawyer advertising "regulate only those communications made for the purpose of proposing a commercial transaction"); *Neely v. Commission for Lawyer Discipline*, 196 S.W.3d 174, 181 (Tex.App.—Houston [1st Dist.] 2006, pet. denied)("For a legal communication to be subject to [the regulation] it must be commercial speech that proposes a professional employment by suggesting to the public, or a specific individual that the lawyer's professional services are available for hire.")[Internal quotation marks

omitted].

In *Texans Against Censorship* a federal district court considered whether a lawyer's advertisement seeking only information from newsletter subscribers was a commercial communication subject to regulation. *Texans Against Censorship,* 888 F.Supp. at 1343-44. The newsletter was entitled "*Pasadena Citizen*" and the advertisement asked subscribers for their thoughts about whether the current system of electing state judges in Texas should be changed. *Id.* at 1343. Even though the advertisement was published by an attorney who admitted he had done so with the hopes that the newsletter's subscribers would read the advertisement and hire him for their legal needs, the court determined the ad itself "[p]lainly" did not propose a commercial transaction because "[a]t most, the advertisement suggests [the attorney] would like to hear what subscribers of the *Pasadena Citizen* think about reforming the judicial selection process." *Id.* at 1344. The court made clear, however, when Texas lawyers "attempt to attract clients by distributing newsletters, public service announcements, or other forms of advertisement and solicitation of the nature of the *Pasadena Citizen* advertisement[,]" *id*. at 1344, it is not the desire to make money which will bring them within the provisions of the regulation, but rather, "it is only when the *message conveyed by the communications suggests* to the public, or a specific individual, that the lawyer's professional services are available for hire that the communication must meet the requirements of the [regulation]." *Id*. [Emphasis added].

By contrast, in *Neely*, an attorney published an advertisement in a local newspaper notifying homeowners in a particular neighborhood that a class action lawsuit was filed against a particular homebuilder and provided the name of the county and identified the court in which the lawsuit had been filed. *Neely*, 196 S.W.3d at 180. The notice also contained the attorney's name

and phone number, but omitted the attorney's occupation. *Id.* Even though the notice did not contain express "magic language" suggesting the reader "may have a claim," the court concluded the ad on its face suggested a commercial transaction and was therefore commercial speech subject to regulation because it indicated that "a class action had been filed [which sought] recovery of damages against a specific defendant . . . for specific plaintiffs, [i.e.] homeowners who qualified as class members." *Id.* at 183.

Consequently, these cases make clear that when determining whether an ad proposes a commercial transaction, a reviewing court looks first to the ad itself to determine whether the message conveyed to the public suggests a lawyer is available for hire. *See id.* at 181 ("a reviewing court must first determine from the face of the [advertisement] whether there is any evidence that the attorney is proposing a commercial transaction."). While the subjective intent of the attorney publishing the ad is relevant, it is not dispositive. *See Texans Against Censorship,* 888 F.Supp. at 1344 ("economic motivation is not totally irrelevant to the determination of whether speech is commercial or noncommerical.").

While Buzbee likens his advertisements to the *Pasadena Citizen's* advertisement, we believe his ads are closer to the ad in *Neely*. Unlike the *Pasadena Citizen* advertisement, Buzbee's advertisements do not purport to solicit opinions from *all* media subscribers about a general topic of interest to El Pasoans, such as the quality of medical services available in the area or even about the quality of medical services offered by Dr. Canales. Rather, like the *Neely* advertisement, Buzbee's ads seeks to communicate with a specific subset of media subscribers, namely, parents whose children were "injured or died while receiving treatment" from a specific medical provider. Such language conveys the message that Buzbee, who is identified as an attorney in the ads, is

8

interested in hearing from *only* potential medical malpractice claimants and that if they respond to the ad, he is available for hire to "investigate" their claim and pursue it on their behalf. While the advertisements in this case do not expressly state "you may have a claim," they clearly *suggest* on their face that Buzbee is available for hire to parents who believe they have a medical malpractice claim against Dr. Canales and if they respond to the ad Buzbee will investigate their claim.

Finally, although Buzbee's affidavit[1] provides some support that the advertisements were *also* published for the benefit of an existing client, "linking commercial speech to issues of public concern does not convert otherwise commercial expression into noncommercial speech." *Texans Against Censorship*, 888 F.Supp. at 1346*; see also Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 68 (1983)("Advertisers should not be permitted to immunize false or misleading product information from government regulation simply by including references to public issues.").

In sum, these advertisements, which were expressly directed to only potential medical malpractice claimants, identify Buzbee as an attorney who handles such claims and urges potential claimants to call him, which suggests he is available for hire to pursue such claims. Accordingly, the ads, in our view, propose a commercial transaction and therefore constitute commercial speech.

**B.     Are the Ads Exempted by the TCPA's Commercial-Speech Exemption?**

The TCPA expressly excludes:

[A] legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a

---

[1] While Buzbee stated in his affidavit that the *sole* purpose of the ads was to solicit information related to the Saucedo's claim, in light of the text appearing in the ads and the message they actually conveyed, we believe the trial court did not err in disregarding Buzbee's self-serving and conclusory statement. *See e.g.* TEX.R.CIV.P. 166a(c)(permitting use of testimonial evidence by interested witness in summary judgment context only if the evidence is "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted."); *see also e.g. Grainger v. W. Cas. Life Ins. Co.*, 930 S.W.2d 609, 615 (Tex.App.—Houston [1st Dist.] 1996, writ denied)("Statements of interested parties, testifying as to what they knew or intended, are self-serving, [and] do not meet the standards for summary judgment proof[.]").

commercial transaction in which the intended audience is an actual or potential buyer or customer[.]

TEX.CIV.PRAC.&REM.CODE ANN. § 27.010(a)(2). When interpreting this exact language under a previous version of the Act in *Castleman v. Internet Money Limited*, 546 S.W.3d 684, 688 (Tex. 2018), the Texas Supreme Court explained the exemption applies "when (1) the defendant was primarily engaged in the business of selling or leasing goods [or services],[2] (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides." *Id.* at 688. The party asserting the exemption bears the burden of proving its applicability. *Miller Wiesbrod*, 511 S.W.3d at 189. "Because a claim falls within the commercial-speech exemption only when all four elements are satisfied, the failure to establish any one element is sufficient to prevent the exemption from applying to a claim." *RigUp, Inc. v. Sierra Hamilton, LLC*, 613 S.W.3d 177, 187 (Tex.App.—

---

[2] We note that "or services" is omitted from the first element in the original quoted language in *Castleman*. In his opening brief, citing to *Castleman*, Buzbee argues Dr. Canales was required to prove Buzbee "was *primarily* engaged in the business of selling or leasing *goods*." [Emphasis added]. However, in his Reply Brief, Buzbee seems to acknowledge that the first element includes "services" but nevertheless clings to his argument made in his original brief. We do not believe the Court in *Castleman* intended to limit application of the commercial-speech exemption to only a defendant who is primarily engaged in the business of selling or leasing "goods." Our belief is based on the Court's repeated references to "services" in other parts of the opinion, *see e.g. Castleman*, 546 S.W.3d at 688 ("[t]hat is, 'the sale or lease of goods or services' must refer to the *defendant's* sale or lease of goods or services"), as well as the plain language of the statute. Indeed, when applying *Castleman*, other courts have treated the omission as an oversight. *See e.g. Morrison v. Profanchik*, 578 S.W.3d 676, 682 (Tex.App.—Austin 2019, no pet.)("The Texas Supreme Court has interpreted [the commercial-speech] exemption to apply when (1) the defendant was primarily engaged in the business of selling or leasing goods *or services* . . .")(*citing Castleman*, 546 S.W.3d at 688)[Emphasis added]; *see also Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 479 (Tex.App.—Houston [1st Dist.] 2020, pet. dism'd)("The Supreme Court of Texas has determined that the commercial-speech exemption applies when the following four elements are shown: (1) the defendant was primarily engaged in the business of selling or leasing goods [or services] . . .")(*quoting Castleman*, 546 S.W.3d at 688). We join them.

Austin 2020, no pet.). Buzbee disputes all four elements.

> **1.    Is Buzbee Primarily Engaged in the Business of Selling or Leasing Goods or Services?**

The reference to the "sale or lease of goods [or] services" in the TCPA's commercial-speech exemption refers "to the *defendant's* sale or lease of goods or services." *Castleman*, 546 S.W.3d at 688. Buzbee does not dispute that his primary business is providing legal services, including representing medical malpractice claimants for a fee. Buzbee argues however, that in order to satisfy the first element of the commercial-speech exemption, Dr. Canales must show Buzbee is "*primarily* engaged in the business of selling or leasing *goods*." [Emphasis added]. According to Buzbee the commercial-speech exemption was meant to capture speech, for example, by a car dealer, who does not make the cars, but only sells them; or an insurance agent, who sells insurance products created by insurance companies. In other words, because a lawyer's "primary business is providing legal services, not advertising the services for sale," the commercial speech exemption does not reach the lawyer's business. Buzbee cites no caselaw to support his argument and we have found none. Dr. Canales, on the other hand relies on our opinion in *Miller Weisbrod* in which we rejected this exact argument. *See Miller Wiesbrod*, 511 S.W.3d at 188-89 (holding lawyer advertisements were commercial speech under the TCPA's exemption in part because "[l]ike proprietors of other commercial enterprises, the lawyer sells his services to prospective buyer[s] or customer[s]."); *see also NCDR, L.L.C v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 755 (5th Cir. 2014)(making an *Erie* guess that lawyer's advertisement campaign soliciting dentist's former patients as potential clients was commercial speech contemplated by the TCPA exemption). Accordingly, we find that as a lawyer, Buzbee and his Firm are primarily engaged in the business of selling legal services, which in this case, includes representing medical malpractice claimants.

11

### 2. Did Buzbee Publish the Ads In His Capacity As a Lawyer Selling His Legal Services?

Buzbee argues the second element of the commercial-speech exemption cannot be satisfied because the ads do not speak of his legal services, but rather speak only about the medical services offered by Dr. Canales. *See ADB Interest, LLC v. Wallace*, 606 S.W.3d 413, 428 (Tex.App.—Houston [1st Dist.] 2020, pet. filed)("the [commercial-speech] exemption does not apply. . . 'when [the defendant] speaks of *other* goods or services in the marketplace,' i.e., goods or services that the speaker does not sell or lease.")(*quoting Castleman,* 546 S.W.3d at 689); *see also Toth v. Sears Home Improvement Products, Inc.*, 557 S.W.3d 142, 154 (Tex.App.—Houston [14th Dist.] 2020, no pet.)(holding commercial-speech exemption did not apply in part because challenged statement was not "'about' the speaker's particular goods or services, or the speaker's business of selling them."). We disagree.

The cases on which Buzbee relies are distinguishable. Unlike the defendant in *Wallace*, Buzbee's advertisements do not arise from his capacity as a *consumer* of Dr. Canales' medical services. *See Wallace*, 606 S.W.3d at 430 (defendant's statements arose after she "purchased several of the [plaintiff's] products for her personal use."). And contrary to the defendant in *Toth*, Buzbee's advertisements do not arise in the context of Buzbee recommending the medical services of another medical provider, nor do they recommend the legal services of another attorney, which might suggest Buzbee was not seeking a commercial benefit for himself. *See Toth*, 557 S.W.3d at 154 (defendant, who was in the business of repairing floors, was not a seller of the particular floor product he recommended to plaintiff's customer). Rather, we find the advertisements on their face clearly identify Buzbee as a seller of legal services, including medical malpractice legal services, to a pool of potential medical malpractice claimants. Buzbee therefore derived a commercial

12

benefit from the ads. Consequently, we believe the ads were published in Buzbee's capacity as a seller of legal services.

3. **Did the Ads Arise Out of a Commercial Transaction Involving the Kind of Services Buzbee Provides?**

Buzbee argues the third element of the commercial-speech exemption cannot be satisfied because the ads merely sought information and were not directed to "existing clients," nor did they propose a transaction. For the reasons discussed above in the commercial vs. noncommercial speech section, we find the ads in this case met the third element of the commercial-speech exemption in part because the advertisements urged *only* parents whose children "were injured or died while being treated by Dr. Canales" to call Buzbee. Such parents fall within a specific category of potential claimants for whom Buzbee is available for hire, i.e. medical malpractice claimants. Indeed, it is undisputed that publication of the ads arose from Buzbee's commercial transaction with the Saucedos who hired him to pursue a medical malpractice claim against Dr. Canales who was the only medical provider identified in the ads. As we stated above, the ads *suggest* to other potential medical malpractice claimants with potential claims against Dr. Canales that Buzbee is available for hire for their claims. The ads therefore arose from a commercial transaction involving the kinds of services Buzbee provides.

4. **Were the Ads Intended For Actual or Potential Customers Seeking The Kind of Services Buzbee Provides?**

Finally, Buzbee contends the intended audience for the ads were "current or former patients of Dr. Canales." While we agree the intended audience *included* current or former patients of Dr. Canales, the advertisements were addressed to parents of *only* those patients who were "kill[ed] or hurt" by Dr. Canales or who were "injured or died while receiving treatment from

Dr. Canales," and were therefore *also* potential medical malpractice claimants. We therefore find these advertisements satisfy the fourth element of the commercial-speech exemption because the audience they targeted were potential medical malpractice claimants, who were potential customers for the kinds of services Buzbee provides.

Because we find Appellees met their burden to demonstrate the advertisements in this case fall within the TCPA's commercial-speech exemption, we need not consider Appellants' remaining issues. *See* TEX.R.APP.P. 47.1.

## CONCLUSION

The trial court's order denying the motion to dismiss is affirmed.

March 9, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.

14



## ATTENTION IMPORTANT!!

If your child was injured or died while receiving treatment from **Dr. Roberto Canales,** we want to talk to you.

We are investigating claims for parents whose children died while undergoing treatment by Dr. Canales and the hospitals with whom he is affiliated.

### Call us immediately!

We are seeking information regarding your experience.

THE
**BUZBEE**
LAW FIRM
1-800-992-5393
www.txattorneys.com





**The Buzbee Law Firm** · Follow
Yesterday at 12:23 PM · 🌐

If your child was injured or died while receiving treatment from Dr. Roberto Canales, we want to talk to you.

We are investigating claims for parents whose children died while undergoing treatment by Dr. Canales and the hospitals with whom he is affiliated.

Call us IMMEDIATELY at 1-800-992-5393!



😮😡👍 28     26 Comments   10 Shares   6.6K Views

👍 Like        💬 Comment          ↗ Share



17






**The Buzbee Law Firm**
Sponsored

Call 1-800-992-5393

Learn More

259 views

If your child was injured or died while receiving treatment from Dr. Roberto Canales, we want to talk to you.

We are investigating claims for parents whose children died while undergoing treatment by Dr. Canales and the hospitals with whom he is affiliated.

Call us IMMEDIATELY at 1-800-992-5393!

19

LANDING PAGE for Facebook Ads



## THE BUZBEE LAW FIRM

# ATTENTION EL PASO AND JUAREZ RESIDENTS!

If your child was injured or died while receiving treatment from Dr. Roberto Canales, we want to talk to you!

We are investigating claims for parents whose children died while undergoing treatment by Dr. Canales and the hospitals with whom he is affiliated.

Call us at 1-800-992-5393 IMMEDIATELY! We are seeking information regarding your experience!

ADVERTISEMENT by The Buzbee Law Firm

**Address**: 600 Travis #7300, Houston TX 77002

**Telephone**: (713) 223-5393

**Fax**: (713) 223-5909

**Website** www.txattorneys.com