

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00122-CV

William Wesley **RUTH**,
Appellant

v.

**COMMISSION FOR LAWYER DISCIPLINE**,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 16375
Honorable Cynthia Marie Chapa, Judge Presiding

Opinion by:　Luz Elena D. Chapa, Justice

Sitting:　　　Luz Elena D. Chapa, Justice
　　　　　　　Liza A. Rodriguez, Justice
　　　　　　　Lori I. Valenzuela, Justice

Delivered and Filed: July 24, 2024

AFFIRMED

Appellant William Wesley Ruth appeals the trial court's judgment suspending him from the practice of law for eighteen months. We affirm the trial court's judgment.

## BACKGROUND

After being injured in a car accident, Stephanie Alvarado hired Ruth to represent her in a personal injury lawsuit against the adverse driver involved in the accident. The lawsuit settled for $43,000.00, and a settlement check made payable to Alvarado and Ruth was mailed to Ruth's office. Ruth deposited the check into his spouse's non-IOLTA bank account and issued a check

in the amount of $33,000.00 to Alvarado from a different non-IOLTA bank account. Despite not having a written fee agreement with Alvarado, Ruth had charged and collected a contingency fee from the settlement amount for his legal representation. He did not provide Alvarado with a written statement describing the outcome of the matter and showing the remittance to Alvarado and the method of its determination.

In August 2019, Alvarado filed a grievance against Ruth with the Office of the Chief Disciplinary Counsel, which ultimately led to the Commission for Lawyer Discipline initiating a disciplinary action against Ruth for violations of the Texas Disciplinary Rules of Professional Conduct 1.04(d), 1.05(b)(1), 1.14(a), and 8.04(a)(1). *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.04(d), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A (requiring contingency fee agreements to be in writing and requiring lawyer to provide client with written statement describing outcome and showing remittance and method of determination), 1.05(b)(1) (prohibiting lawyer from disclosing confidential information of client), 1.14(a) (requiring lawyer to hold funds in separate "trust" or "escrow" account), and 8.04(a)(1) (prohibiting lawyer from violating disciplinary rules). The Commission then moved for partial summary judgment on its claims Ruth had violated the disciplinary rules. After a hearing, the trial court granted partial summary judgment in favor of the Commission, stating Ruth violated Rules 1.04(d), 1.14(a), and 8.04(a)(1). On December 14, 2022, the case proceeded to a one-day bench trial on the issue of sanctions, and the trial court heard testimony from Alvarado and the Coryell County District Attorney. The trial court ultimately entered a final judgment, imposing an eighteen-month active suspension against Ruth. This appeal followed.

## ANALYSIS

Ruth contends the trial court's eighteen-month suspension was an inappropriate sanction because: 1) it does not advance the purpose of the Texas Rules of Disciplinary Procedure, 2) he

did not cause actual or potential harm to anyone, and 3) it was based on a previous judgment of suspension that was pending on appeal. According to Ruth, the suspension should be set aside, and we should remand this case to the trial court for a new trial on sanctions.

### Standard of Review

We review the sanction imposed on an attorney for professional misconduct for an abuse of discretion. *Neely v. Comm'n for Law. Discipline*, 196 S.W.3d 174, 186 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *McIntyre v. Comm'n for Law. Discipline*, 169 S.W.3d 803, 807 (Tex. App.—Dallas 2005, pet. denied). "The judgment of a trial court in a disciplinary proceeding may be so light, or so heavy, as to constitute an abuse of discretion." *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 659 (Tex. 1994). "At the same time, the trial court has broad discretion to determine whether an attorney guilty of professional misconduct should be reprimanded, suspended, or disbarred." *Id.*; *see Rosas v. Comm'n for Law. Discipline*, 335 S.W.3d 311, 320 (Tex. App.—San Antonio 2010, no pet.) ("A trial court has broad discretion to determine the consequences of professional misconduct."). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding principles. *See Rosas*, 335 S.W.3d at 320. But the mere fact the trial court "may decide a matter differently than an appellate court does not demonstrate an abuse of discretion." *Cantu v. Comm'n for Law. Discipline*, No. 13-16-00332-CV, 2020 WL 7064806, at *20 (Tex. App.—Corpus Christi Dec. 3, 2020, no pet.) (mem. op.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985)).

### Applicable Law

For attorney discipline cases involving grievances filed before June 1, 2018, Rule 3.10 of the Texas Rules of Disciplinary Procedure sets forth several factors for trial courts to consider in determining the appropriate sanctions for misconduct. *See* Tex. Rules Disciplinary P. R. 3.10

(repealed June 1, 2018). For cases involving grievances filed after June 1, 2018, as here, the Texas Supreme Court replaced these factors with guidelines in part XV of the current version of the Texas Rules of Disciplinary Procedure. *See* Order Adopting Amendments to the Texas Rules of Disciplinary Procedure, Misc. Docket No. 18-9031 (2018); Tex. Rules Disciplinary P. R. 15.01– .09 *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. B. In this case, Alvarado filed her grievance against Ruth in August 2019; therefore, we apply the guidelines in the current version of the rules. *See* Order Adopting Amendments to the Texas Rules of Disciplinary Procedure, Misc. Docket No. 18-9031 (2018).

According to the guidelines, "[t]he purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely to properly discharge their professional duties to clients, the public, the legal system, and the legal profession." Tex. Rules Disciplinary P. R. 15.01(A). The guidelines further provide the disciplinary tribunal should consider "the duty violated," "the Respondent's level of culpability," "the potential or actual injury caused by the Respondent's misconduct," and "the existence of aggravating or mitigating factors" when imposing a sanction. *Id*. R. 15.02. In cases where a lawyer fails to preserve client property, "[s]uspension is generally appropriate when a Respondent knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." *Id*. R. 15.04(B)(2). Suspension is also "appropriate when a Respondent knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system." *Id.* R. 15.07(2).

### *Application*

We begin our analysis by considering the first factor the guidelines provide the disciplinary tribunal should consider—"the duty violated." *See id*. R. 15.02. In this case, Ruth does not dispute the duties he violated or challenge the trial court's partial summary judgment, which stated he

violated Rules 1.04(d), 1.14(a), and 8.04(a)(1) of the Rules of Professional Conduct. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.04(d), 1.05(b)(1), 1.14(a), and 8.04(a)(1). In fact, in his brief, Ruth states he "conceded during the sanctions trial that he violated the duties to have a written contract, to have a written itemization of the settlement[,] and to deposit the insurance check in an IOLTA account."

As to Ruth's level of culpability, Ruth does not dispute he improperly handled Alvarado's settlement proceeds and violated duties owed as a professional; thus, recognizing he knew or should have known his actions were improper. *See* CULPABILITY, Black Law's Dictionary (11th ed. 2019) (defining culpability as "moral blameworthiness" and "mental state that must be proved for a defendant to be held liable for a crime"). Rather, he attempts to justify his misconduct by arguing his level of culpability is "low" because Alvarado testified at the sanctions hearing she was not confused about their contractual agreement, a written itemization of the settlement was unnecessary because no expenses needed explaining, and paying Alvarado from a personal account placed the funds into her possession quicker. However, these justifications lack merit because they fail to explain Ruth's level of culpability and focus instead on minimizing the gravity of his actions.

Turning to the potential or actual injury caused by Ruth's misconduct, Ruth asserts Alvarado was not harmed by his misconduct. It is well-established "[a]mong an attorney's foremost ethical obligations is the proper handling of clients' funds and trust accounts." *Neely v. Comm'n for Law. Discipline*, 302 S.W.3d 331, 350 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). And we have recognized this ethical obligation, cautioning the potential danger "that funds in a commingled account will be viewed as the lawyer's property, rather than the client's, and will thus be subject to the claims of the lawyer's creditors." *Brown v. Comm'n for Law. Discipline*, 980 S.W.2d 675, 680 (Tex. App.—San Antonio 1998, no pet.); *see also* Tex.

Disciplinary R. Prof'l Conduct 1.14 cmt. 2 (cautioning against commingling because such course of dealing increases risk that all assets of account will be viewed as the lawyer's property and subject to creditors); 48 Robert P. Schuwerk, et al., *Tex. Prac., Tex. Lawyer & Jud. Ethics* § 6:14 (2024 ed.). Thus, even assuming Alvarado was not actually harmed by Ruth's actions, the guidelines account for the potential for harm. *See* Tex. Rules Disciplinary P. R. 15.02.

Finally, with respect to "the existence of aggravating or mitigating factors," Ruth contends the trial court did not consider "the absence of a dishonest or selfish motive" or his "inexperience in the practice of law" as mitigating factors. Under the guidelines, a disciplinary tribunal may consider mitigating factors, such as those listed by Ruth, in determining mitigation. *See id.* R. 15.09(C) (outlining factors which "may" be considered in mitigation). However, it may also consider aggravating factors in determining aggravation. *See id.* R. 15.09(B) (outlining factors which "may" be considered in aggravation). Here, the trial court was presented with evidence solely of aggravating factors concerning Ruth's past conduct. During the sanctions trial, the Coryell County District Attorney testified in 2019, he was a special prosecutor assigned to investigate several charges against Ruth, including an assault on a public servant and "some misdemeanor evading and resisting charges." During his investigation, additional charges followed for "aggravated perjury" and "[t]he misapplication of fiduciary duty [and] the obstruction, retaliation, the fraudulent use of identifying information." He testified the matters were resolved by Ruth pleading guilty to the lesser included offense of assault on a public servant. In addition to this testimony, the Commission produced evidence showing Ruth's legal license had been suspended for five years in September 2022. Ruth, however, contends the September 2022 judgment of suspension should not have been considered because it was pending on appeal, but there is nothing in the record indicating his judgment of suspension had been stayed and should

not have been considered.[1] Thus, based on this record, it is clear the trial court considered the existence of aggravating factors when determining the degree of discipline imposed.

When considering the factors a disciplinary tribunal should consider when imposing a sanction—"the duty violated," "the Respondent's level of culpability," "the potential or actual injury caused by the Respondent's misconduct," and "the existence of aggravating or mitigating factors," we cannot conclude the trial court acted unreasonably or arbitrarily to constitute an abuse of discretion. *See Neely*, 196 S.W.3d at 807; *Rosas*, 335 S.W.3d at 320. Here, Ruth concedes he violated several rules of professional conduct, and the record shows he knowingly violated these rules by mishandling the settlement. Such misconduct could have potentially harmed Alvarado, and there is evidence of aggravating factors the trial court could have considered. To the extent Ruth contends the trial court's eighteen-month suspension does not advance the purpose of the disciplinary rules and therefore he should have received a lesser sanction, Ruth fails to cite any legal authority supporting this contention. *See* TEX. R. APP. P. 38.1(i). Furthermore, we must remain mindful an abuse of discretion does not occur merely because a trial court may have decided a matter differently and imposed a lesser sanction. *See Cantu*, 2020 WL 7064806, at *20. Accordingly, we conclude the trial court did not abuse its discretion.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

---

[1] We note on June 20, 2024, this court issued an opinion affirming the September 2022 judgment of suspension referenced during the sanctions trial. *See Ruth v. Comm'n for Law. Discipline*, No. 04-22-00796-CV, 2024 WL 3056655 (Tex. App.—San Antonio June 20, 2024, no pet. h.) (op.).